(112 App. Div. 389)

HARRIS v. BALTIMORE MACHINE & ELEVATOR WORKS.

(Supreme Court, Appellate Division, Second Department. April 20, 1906.)

1. MASTER AND SERVANT—INJURIES TO SERVANT—EMPLOYER'S LIABILITY ACT—
    ACTIONS—COMPLAINT.
        A complaint against the master for injuries to a servant through the negligence of a superintendent alleged that plaintiff, being in defendant's employ, was directed by it to enter and use an elevator which it had constructed, and which was under its control, and that he did so; that the elevator was negligently constructed, in that the cable by which it was suspended was negligently fastened to the top of the car, and that by reason thereof, and of defendant's negligence in directing plaintiff to use the car, the cable became unfastened and the car fell. *Held*, that such complaint properly alleged a cause of action for negligence of defendant's superintendent, under Employer's Liability Act, Laws 1902, p. 1748, c. 600, without alleging that plaintiff was directed by "the superintendent" to use the car, and that such superintendent did the other negligent acts complained of.

2. SAME—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.
        In an action for injuries to a servant, evidence considered, and *held* that, whether defendant's superintendent was negligent, and whether

plaintiff was guilty of contributory negligence, were questions for the jury.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 1064, 1089–1132.]

3. SAME—INSTRUCTIONS.

Where, in an action for injuries to a servant, the only negligence litigated was that of defendant through its superintendent, who under the employers' liability act was not plaintiff's fellow servant, but represented defendant, an instruction that defendant owed plaintiff the duty of reasonable care to see that the elevator in question was safe for the purposes for which plaintiff was using it at the time of the accident was not objectionable as making defendant liable for the negligence of plaintiff's fellow servants.

4. APPEAL—REVIEW—COSTS—EXTRA ALLOWANCE.

An order granting an extra allowance can only be reviewed by an appeal therefrom.

5. MOTIONS—ORDERS—ENTRY.

An order granting an extra allowance of costs appearing on the clerk's minutes is valid without a formal order signed by the trial judge.

Appeal from Trial Term, Kings County.

Action by Norman C. Harris against the Baltimore Machine & Elevator Works. From a judgment for plaintiff, and from an order denying defendant's motion for a new trial on the minutes, defendant appeals. Affirmed.

Action by servant against master for negligence. An agent was employed by the defendant to solicit orders for their electrical elevators in New York City, and install them. He hired the plaintiff and other skilled mechanics in that kind of work to do the work under his superintendence. A freight elevator the plaintiff was working on fell and hurt him. Its construction was that it was lifted by two cables which had to be fastened in an iron shackle, which was attached in turn to the top of the car. They ran through a hole in the shackle, and had to be fastened there by pouring in of molten babbitt (a metal harder than lead), in addition to their strands being turned up and knotted. They ran over a drum at the top of the shaft. The plaintiff knew they would have to be babbitted and that they would be dangerous if not fastened in that way, in that they were likely to pull out of the shackle and let the elevator drop. He did not babbitt them; he only turned up and knotted the strands. There was no babbitt there and no pot or furnace to heat it, he says. At this stage the said agent or superintendent sent him to work at another building installing an elevator. "At that time", the plaintiff testified, "I asked him how we were going to babbitt our cables; he said he would get a lead pot or furnace." He says the superintendent asked him at that time what there was still to do on the elevator, and he told him "babbitting the cables", putting the cables on the drum and putting in the counterweights. After working about two weeks or ten days on the other job the said superintendent told him he was going to put the elevator in order, and asked the plaintiff about the work. He again told the superintendent it was necessary to "babbitt the cables" and do the said two other things. The superintendent then took one of the workmen who was with the plaintiff away to work at the first elevator. Some days later he told the plaintiff to go back to work on the first elevator, and the plaintiff testified that the superintendent told him the elevator "was all right to run, all ready, only she ran too close to the front of the hatch." On the cross-examination he said what the superintendent said was "that he tried the elevator and found it all right"; and on the court immediately calling his attention to the difference he said he thought the words were that "the elevator was all right." The next day he and the superintendent went to work together in the elevator putting in the counterweights. They went up by the elevator to a floor and took on six or seven counterweights. They weighed about 125 pounds each. They then started to go up further in the elevator with the counterweights when the

cables pulled out of the shackle and let the elevator drop to the bottom of the shaft. The plaintiff did not look before using the elevator to see if the babbitting which he left undone had been done. He could have looked from a floor above, or by standing by an opening on the floor and simply lowering or raising the elevator so its top would be before his eyes, or by getting up on the car, which anybody could do, as he testified.

The plaintiff was the only witness on his side, except the testimony as to his injuries. The superintendent was the only witness called against him. He denied that the plaintiff ever told him there was no pot or furnace or babbitt, or that the babbitting had not been done.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, RICH, and GAYNOR, JJ.

Theron G. Strong, for appellant.
Herbert T. Ketcham, for respondent.

GAYNOR, J. 1. At the close the learned trial judge ruled that the complaint alleged a cause of action under the employers' liability act (Laws 1902, p. 1748, c. 600) and charged the jury on that footing, viz., that if the plaintiff was hurt by the negligence of the superintendent he could recover, if he was free from contributory negligence. The complaint is now, as on the trial, criticised as not stating a cause of action under the statute. It alleges that the plaintiff, being in the employ of the defendant, was directed by it to enter an elevator which it had constructed and had under its control, and use the same, and that he did so; that it was negligently constructed in that the cable by which it was suspended was negligently fastened to the top of the car; and that by reason thereof, and of defendant's negligence in directing the plaintiff to use the car, the said cable became unfastened, and the car fell. In the last paragraph it alleges service of the notice required by the statute. The complaint is well drawn; it is barren of allegations of evidence, and other unnecessary allegations. It is said that the complaint should in strictness have alleged that the plaintiff was directed by the superintendent to use the car, and that such superintendent did the other negligent acts, in order to be deemed under the statute. The learned trial judge shared this view, but ruled nevertheless that the complaint could be eked out as sufficient. The pleader was entirely right in alleging that the negligence was that of the defendant. To have alleged that the negligence was that of the superintendent would have been unscientific and not in due form. The negligence to be recovered for under the statute is that of the defendant and not of the superintendent or any agent or employé, the very same as under the common law. The statute merely changes the common law rule by making the negligence of the superintendent that of the master in the cases where at common law it would be that of a fellow servant. The complaint should be for the negligence of the defendant in every case, now as always, and evidence that the superintendant did the negligent act makes out the allegation of the complaint. For a complaint to allege in any case that the defendant by his agent or servant did thus and so would not be scientific form. The proper form is that the defendant did it, and whether he did it personally or by an agent matters not; in either case he did it. Which way he did it is a matter of evidence, not of pleading. These are every day rules of pleading, too familiar to dwell over.

2. The case was submitted to the jury to find whether the superintendent was negligent in not having the cables babbitted in the shackle, and directing the plaintiff to use the elevator in that condition. Assuming that the plaintiff when he was sent away from the work of installation to work on the elevator in the other building informed the superintendent that the babbitting had not been done, and again later on, as he says, and the superintendent then continued the work, he could be found negligent in not babbitting the cables, for concededly he had the elevator suspended by the cables from the drum, and set running while the plaintiff was working at the other place. without having the babbitting done.

3. Whether the plaintiff was guilty of contributory negligence in using the elevator with the superintendent after he was brought back to it after his absence of about two weeks without looking to see if the babbitting had been done meanwhile was a question for the jury. He was taken away from the work before the babbitting had been done and the cables set in the drum and the elevator set running. The superintendent told him that he would go on with the work, and when he was brought back the elevator was suspended by the cables from the drum and running. Whether this was not sufficient to induce a prudent person to understand and believe that the babbitting had been done was a question of fact, not of law, for the babbitting should have been done before the elevator was suspended and set running.

4. It must be owned that the essential questions of fact were close. It was the testimony of the plaintiff against that of the superintendent. But the defendant's side must have been seriously discredited in the minds of the jury by contesting that the superintendent was such. The plaintiff was put to much proof and was met with every objection that could be made in establishing that fact; and yet when the superintendent was put on the stand by the defendant he freely admitted he was superintendent, and there never was the slightest ground for denying it. In considering the weight and credibility of the evidence this justly counted for something, and sometimes the like counts for much. Trial judges see cases lost in this way every day.

5. There is an exception by the defendant to the charge of the trial judge in substance that the defendant owed the plaintiff the duty of reasonable care to see that the elevator was safe for the purpose for which he was using it at the time of the accident. This had reference to the uncontroverted fact that the superintendent did have the elevator suspended to its cables and set going during the plaintiff's absence, and had it running for him to work on when he came back. Construed with the whole charge, as it must be, and not isolated and technically, it can only refer to the negligence of the defendant through its superintendent, for that was the only thing litigated; and his negligence would under the statute be that of the defendant and not of a fellow servant. The statute took the superintendent out of the category of fellow servants. There was no claim of the negligence of any fellow servant or of any one except the superintendent throughout the trial.. The whole tenor of a trial has to be considered in construing a charge. The charge was therefore not open to the construction that the defendant was made liable for the negligence of fellow servants.

6. The order granting the extra allowance can only be reviewed by an appeal therefrom. The order appears on the clerk's minutes. That suffices without a formal order signed by the trial judge. Formerly all orders were entered by the clerk on his minutes, and that suffices still, although it has been much lost sight of in the growing formality of recent years. But there is no appeal from that order.

The judgment and order appealed from should be affirmed.

Judgment and order affirmed, with costs. All concur.