### SIMPSON v. FOUNDATION CO.

(Supreme Court, Appellate Division, Second Department. May 7, 1909.)

MASTER AND SERVANT (§ 258*)—EMPLOYER'S LIABILITY ACT—APPLICATION TO CASE—PLEADING.

Where a petition for negligence is based on the failure to furnish signalmen to warn plaintiff of danger, and does not show that the cause of the accident was one for which the master is liable under the provisions of Laws 1902, p. 1748, c. 600, § 1, making a master liable for the negligence of an employé whose whole or part duty is that of superintendence, the petition is for common-law negligence, and the statute has no application.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 258.*]

Gaynor and Rich, JJ., dissenting.

Appeal from Trial Term, Queens County.

Action by Patrick Simpson against the Foundation Company for personal injuries. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed, and new trial ordered.

Argued before WOODWARD, JENKS, GAYNOR, RICH, and MILLER, JJ.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Frank V. Johnson, for appellant.
Charles J. Nehrbas, for respondent.

WOODWARD, J.   The plaintiff brings this action to recover damages for personal injuries sustained by him while in the employ of the defendant on the 27th day of June, 1906, on the premises at the corner of Broadway and Thames street, in the borough of Manhattan. The case was closely contested, and the evidence appears sufficient to sustain the verdict; but, owing to errors in the trial, the judgment should be reversed.

The complaint, aside from the formal averments, sets forth that "in order to protect the life and limb of plaintiff in his employment about said premises, under chapter 600 of the Laws of the State of New York of the Year 1902, it was the defendant's duty to furnish safe appliances and devices, competent and a sufficient number of servants to operate said devices and appliances, a safe set of signals, or other devices to warn plaintiff of the approach of swinging things, such as derricks, buckets, and hoisting machinery, and in the nighttime a sufficient number of lights and like appliances about said premises, so that plaintiff could see about him with reasonable clearness and accuracy; that at the time aforesaid the defendant operated a derrick and bucket, which swung, raised, and lowered in and about said premises, and in utter disregard of its duty to the plaintiff failed to supply a sufficient number of servants to operate said apparatus, failed to furnish or supply signalmen at various points about said premises to warn plaintiff of the approach of said apparatus, or any of its parts, failed to furnish or supply other signals or appliances, of any kind whatever, to warn plaintiff of the approach of said apparatus or any of its parts, and failed to supply sufficient electric lights, or any other kind of light, in the nighttime to enable plaintiff to see about said premises with reasonable clearness, so that said premises were dark; that solely as a result of the defendant's negligence as aforesaid, and without any fault or negligence on the part of the plaintiff," the latter was struck by one of the buckets, with the resulting injuries. The complaint then alleges the sending of a notice under the provisions of the employer's liability act (Laws 1902, p. 1748, c. 600), and demands judgment for the sum of $75,000.

It is to be observed that, with the exception of the alleged service of the statutory notice and a reference to the provisions of chapter 600, p. 1748, of the Laws of 1902, there is no allegation of a single fact to bring the case within the provisions of the employer's liability act. The negligence which is specifically alleged, and which is said to be the sole cause of the injuries, is common-law negligence. The common-law right of action is not changed or regulated by the provisions of chapter 600, p. 1748, of the Laws of 1902, as we distinctly held in the case of Rosin v. Lidgerwood Manufacturing Co., 89 App. Div. 245, 86 N. Y. Supp. 49, and this doctrine was specially approved by the Court of Appeals in Gmaehle v. Rosenberg, 178 N. Y. 147, 152, 70 N. E. 411.   It is true that in the case of Harris v. Baltimore Machine & Elevator Co., 112 App. Div. 389, 98 N. Y. Supp. 440, Mr. Justice Gaynor, with his usual accuracy of distinction in matters of

pleading, pointed out that it was not necessary, or even proper, in a complaint, to allege that the negligent act of the defendant was that of a superintendent, as this was a mere matter of proof; but the Court of Appeals, in affirming that decision, say (188 N. Y. 141, 144, 80 N. E. 1028, 1029):

"It is not necessary, in order to plead a cause of action under the employer's liability act, that its precise language should be made use of, provided that it appear plainly from what is alleged that 'the cause of action was within the provisions of the act and that its requirement° of the giving of a notice to the defendant has been complied with."

It must appear from the pleadings that the cause of the accident is one for which the master is liable under the provisions of chapter, 600, p. 1748, of the Laws of 1902, or there is no place in the action for the notice, and it is not governed in any of its details by the provisions of that act, but stands solely upon its common-law basis. "In Ward v. Manhattan Railway Co., 95 App. Div. 437, 88 N. Y. Supp. 758, this court," say the court in Curran v. Manhattan Railway Co., 118 App. Div. 347, 349, 103 N. Y. Supp. 351, 353, "made the observation that, as it then construed the employer's liability act, the provisions of sections 1 and 2 could not be taken advantage of except the action was brought under the act, but that the provisions of section 3, respecting the assumption of risks, applied to all actions by an employé against his employer, whether under the act or at common law. Further consideration has led us to conclude that, in order to entitle an employé to the benefit of the provisions of the employer's liability act, he must bring his action under that act and conform to its terms in so doing (Chisholm v. Manhattan Railway Co., 116 App. Div. 320, 101 N. Y. Supp. 622), and that in an action for common-law negligence he is not entitled to the benefits of its provisions, but must be governed by the rules of the common law."

This being the law, and the plaintiff having pleaded only a common-law action, he had no right to introduce in evidence the alleged notice served upon the defendant, even assuming that the notice would have been a proper one in an action under the statute. This alleged notice, which was prepared by the plaintiff's attorney, and which was introduced in evidence over the defendant's specific objection that the cause of action pleaded was one at common law, and not under the statute, reads as follows:

"Please take notice that Patrick Simpson claims and demands from the Foundation Company $50,000 for damages sustained by said Simpson as a result of personal injuries caused by the negligence of the Foundation Company on June 27, 1906. Said negligent acts occurred in a building in the course of construction which is situated on Broadway (west side), near Cedar street, in the borough of Manhattan; * * * the said Foundation Company having been at said time engaged in building the foundation for said building and while said Simpson was in their employ. Said accident was caused by the failure of the said Foundation Company to provide proper protection for the said Simpson in his employment, and as a result thereof, said Simpson was struck by a bucket, which was being used for hoisting purposes, causing him to fall into a pit, whereby he sustained serious injury. This notice is given pursuant to chapter 600 of the Laws of 1902 of the State of New York, and the said Patrick Simpson intends to bring action therefor."

It will be noticed that this notice does not mention any negligent act on the part of a superintendent; that it does not suggest any defect in the ways, works, or machinery. It merely alleges matters which go to make up a common-law cause of action for negligence, and it has no more place in the record in this case than has the Declaration of Independence.

It may be assumed, without discussion, that in pleading a cause of action under the employer's liability act it is not necessary to allege that the negligence is that of the master by his superintendent; that it is sufficient to allege the master's negligence, and to sustain the allegation by showing that it was done or omitted by one discharging the duties of a superintendent; but a very different proposition is presented in reference to the notice which is required by the statute. The purpose of that notice is to inform the master that an accident has occurred for which he is liable under this statute, as no notice is required under the common law. The employé is given an enlarged right of action against the master for the negligent act of a superintendent, or for defects in the works, ways, or machinery; and this enlarged right is given on condition that the employé, within 120 days of the accident, shall give the employer notice, not generally, but specifically, of an act of omission or commission on the part of a superintendent, or of a defect in the works, ways, or machinery. A general notice of negligence, such as might be entirely proper in a complaint, is not notice to the master that an accident has occurred for which he is specially liable. The master, in good faith and fair dealing, if he is to be subjected to a special liability, has a right to be informed of the basis of such special liability—has a right to a notice calling his attention to the fact that the accident was due to the negligence of one discharging the duties of a superintendent, or that it was due to a defect in the works, ways, and machinery—to the end that he may investigate the particular facts which are to be relied upon in the action, preserve his evidence, and take such steps as his own interests shall dictate. The enlarged right of action is coupled with a duty on the part of the employé, and there is no hardship in requiring that this condition shall be performed. If the action is one at common law, there is no need of a notice, and a weak cause of action, or a doubtful one, at common law, is not entitled to be bolstered up by a reference to the employer's liability act. It might be that where a notice had been served in good faith, and had been admitted in evidence, and the facts showed purely a common-law action, a charge on the part of the court that the notice had no bearing on the case would cure the error; but to permit the evidence to go in over objection, where the notice itself failed to show any liability under the statute, and then to read the statute, and to tell the jury that they must apply this statutory law to a common-law liability, is to give to the plaintiff an advantage which was not contemplated by the act, and to which in justice he is not entitled.

With this notice in evidence over the defendant's objection and exception, the learned trial justice, in charging the jury, read sub-

division 1 of section 1, and section 3, of the employer's liability act, to the jury, and charged them that:

"This action is brought under this act, and this law applies to the evidence in this case, and you must apply this law to the evidence."

This portion of the charge was duly excepted to, counsel specifically objecting to the reading of the act, on the ground that it had no application to the issues framed, and asked the court to charge that:

"There is no evidence in this case to warrant a finding that there was any defect in the ways, works, or machinery furnished by the defendant which in any way contributed to this accident."

This was refused, and defendant took an exception. This was clearly error. The notice, as we have seen, had no place in the case, and the law is clear that the provisions of chapter 600, p. 1748, of the Laws of 1902, have no bearing whatever upon a common-law cause of action. It was error, therefore, for the court to charge the jury that they must apply this law to the evidence in this case. See, generally, upon the question, Finnigan v. New York Contracting Co., 122 App. Div. 712, 107 N. Y. Supp. 855; Barry v. Derby Desk Co., 121 App. Div. 810, 106 N. Y. Supp. 575, much in point; Chisholm v. Manhattan Ry. Co., 116 App. Div. 320, 101 N. Y. Supp. 622; Kennedy v. New York Telephone Co., 125 App. Div. 846, 849, 110 N. Y. Supp. 887, and authorities there cited; Mahoney v. Cayuga Lake Cement Co., 126 App. Div. 164, 110 N. Y. Supp. 549; Palmieri v. Pearson & Son, Inc., 128 App. Div. 231, 232, 112 N. Y. Supp. 684, and authorities there cited.

The judgment and order appealed from should be reversed, and a new trial granted; costs to abide the event

MILLER, J. I think this judgment should be reversed, because the case was submitted to the jury on an erroneous theory. In charging the jury, the court stated the claims of the parties substantially as pleaded, made some general observations, read sections 1 and 3 of the employer's liability act, saying, "This action is brought under this act, and this law applies to the evidence in this case, and you must apply this law to the evidence," referred to the master's duty to furnish a safe place and suitable appliances and materials, and to the rule of assumption of risk, and then submitted the following questions to the jury: (1) Did the defendant provide a safe place and exercise proper care to keep it safe? (2) Under all the circumstances of the case, was there any negligence on the part of the master? (3) Did the plaintiff contribute to the happening of the accident? (4) Did the plaintiff assume the risks of his employment? The defendant specifically excepted to the court's charge respecting the application of section 1 of the employer's liability act and the master's duty to furnish a safe place, and to the refusal of the court to charge that there was no evidence to warrant a finding that there was any defect in the ways, works, or machinery.

Neither the rule of safe place nor section 1 of the employer's liability act applies to this case. The master was liable, not for a defect in the ways, works, or machinery, nor for the failure to furnish a safe

place in which to work, but, if at all, for not furnishing a signal-man. The evidence respecting the light, the absence of bell or other signal, and the obstructions of the engineer's view, only relate to the defendant's duty to furnish a signalman and to the question of the plaintiff's contributory negligence. The defendant's evidence tends strongly to show that the engineer had a plain view of the men on the platform, and that the signalmen, referred to by the plaintiff's witnesses as present on prior occasions, were there to give warning of the movement of another machine at a different place. The question upon which the verdict should have turned—i. e., whether the engineer had an unobstructed view of the men on the platform—was not suggested by the court to the jury, except in response to a request to charge. In substance, the jury were instructed to apply the employer's liability act to the case, and to say whether the defendant had furnished a safe place, and whether, under all the circumstances in the case, it was guilty of any negligence. A layman might easily conclude that the platform was unsafe from the mere fact that the plaintiff was knocked from it by the derrick. It is true that the failure to furnish a signalman was stated by the court as among the claims of the plaintiff but that was far from stating the precise question for the jury to decide, and the only questions actually submitted were the general ones, as above stated.

A charge confined to a statement of abstract general principles, even if applicable to the case, is more likely to confuse than to aid the jury, and certainly the submission to them of abstract questions not in the case may be presumed to have been harmful. The jury can be expected to decide intelligently only when the precise point to be decided is concretely stated to them. If the main charge fails to instruct them, requests to charge are apt to be futile. A verdict on a sharply contested issue of fact should not be permitted to stand, where the charge is confined to abstract general principles, especially, as here, if they have no application to the case and are excepted to.

I think the learned counsel for the appellant sufficiently raised the point. His brief called attention to the exceptions, with folio references to the record. He argued that the employer's liability act had no application to the case; but, by contending for more than we are deciding, he did not lose the benefit of the proposition which the majority of us agree to, to wit, that section 1 of the employer's liability act does not apply.

JENKS, J., concurs.

GAYNOR, J. (dissenting). The action was for damages for negligence. The defendant was engaged in sinking deep caissons for the foundations of a large building in lower Manhattan. The plaintiff was foreman of a gang of eight men engaged in the work. The accident to him happened about midnight. The work was being done by electric light. There is evidence that the light was dim at the place where the plaintiff was hurt, and to the contrary. The excavation was 30 feet deep. In it was a platform 15 feet square, and 25 feet above the bottom, supported by upright timbers. In the centre of it was

a chute or hopper 2 feet square, which fed a concrete mixer under the platform. On it were a barrel of water and a quantity of cement. Alongside of this platform, but 7 feet higher, and by the side of the street, was another platform. On it was a derrick and a small engine to run it. Sand and crushed stone were dumped to the bottom of the excavation from the street. From the arm of the derrick swung a bucket from a block and fall. The engineer would by means of his engine, raise the bucket, swing it free of the said hopper platform, and lower it to the bottom of the excavation. There 6 men of the plaintiff's gang would fill it with sand and crushed stone, whereupon the engineer would raise it to the said platform and swing it in by the derrick arm to the hopper, where the other 2 men of the gang would add water and cement and dump it into the hopper; and this process went on continually. The plaintiff came up from the bottom of the excavation to the said hopper platform by the ladder in supervising the work, and while he was at the edge of the platform calling down directions to the men below, the engineer swung the bucket rapidly across the platform by the derrick arm, and the bucket hit the plaintiff and knocked him off the platform and into the pit.

The principal question of negligence on which the case was tried, and which was found against the defendant by the jury, was whether the defendant owed the duty to the plaintiff and the other men of having a signalman at the edge of the engine platform to watch the men on the hopper platform below and direct the engineer in reference to their safety and also warn them of the approach of the bucket when necessary. There was sufficient evidence to support a finding that up to the night of the accident there was such a signalman, who called out such directions and warnings, and that the plaintiff was not aware of his absence or that he had been dispensed with. There was also sufficient evidence to support a finding that the engineer was stationed with his engine so far in or away from the edge of the engine platform, that he could not see the hopper platform, or a large part of it, or the persons thereon, so as to look out for them in the swinging of the bucket by the derrick arm. It was therefore a fair question whether the defendant was not guilty of negligence to the plaintiff in not having a signalman. Aleckson v. Erie R. Co., 101 App. Div. 395, 91 N. Y. Supp. 1029. The plaintiff had to use due care in his dangerous position, but it could not be ruled by the trial court that he was as matter of law guilty of contributory negligence. The refusal to charge the request on this head was not error, for while it was in the main correct, it contained the erroneous proposition that if the plaintiff "failed to observe" "the position of the bucket prior to the happening of the accident" he could not recover. That he failed to see it was the fact; but the question was whether, considering the lack of light, his surroundings and all, such failure was negligent. A trial judge is not required to separate the good from the bad in requests to charge. A request containing anything bad may be properly refused. The plaintiff was allowed to testify in his introductory examination that he had a wife and four children. It is customary to ask witnesses such questions to show who they are and

their status in the community, as that affects the credence and weight to be given to their evidence. The learned counsel for the defendant cites no decision that the practice is erroneous. If a case be one in which it is claimed the usual practice should not be followed, the reason therefore should be stated in the objection, instead of making the ordinary general objection, as was done in this case, so that the trial judge may exercise his discretion. The engineer being called by the defendant testified that he could see the hopper platform and did not need a signalman. Having denied on cross-examination that after the accident happened he exclaimed to another person, "Don't blame me, I had no signalman," such person was allowed to testify that he did. This was competent, not to prove that a signalman was necessary, but as a prior inconsistent statement affecting credibility. Hanlon v. Ehrich, 178 N. Y. 474, 71 N. E. 12. It was not error to refuse to charge that negligence of the defendant could not be based on failure to use a warning bell or whistle in the absence of a signalman. The jury could have found that that way of warning would have sufficed to excuse the failure to have a signalman. The learned trial judge did not touch on this head in his main charge. The matter of the sufficiency of the light, with all of the conditions, bore on the question of the plaintiff's contributory negligence as well as on the defendant's negligence in having the place where the plaintiff was dark, and the question of whether there should not therefore have been a signalman, and therefore the refusal of the court to withdraw that matter from the jury as requested by the defendant was not error. Two papers, purporting to contain statements of the accident made by two witnesses for the defendant but not signed by them, were received in evidence to show prior inconsistent statements by them, their attention having been called to them while they were on the stand. That the statements were not signed was no reason to exclude them, there being testimony that they read them and declared them to be correct. Novogrucky v. Brooklyn Heights R. Co., 125 App. Div. 715, 110 N. Y. Supp. 28. If any part of such a statement does not come under the head of prior inconsistency, but is foreign to the purpose for which the paper is admissible, it has to be specifically pointed out to the trial court in order to serve as the basis of error. Gaffney v. People, 50 N. Y. 416. The notice under the employer's liability act was sufficient. It says that the plaintiff "was struck by a bucket, which was being used for hoisting purposes, causing him to fall into a pit," and that this was caused by the failure of the defendant "to provide proper protection" for the plaintiff. These notices of laymen to laymen should not be judged with too much nicety. In the course of the examination of a witness, in answer to the question, "Whom did he" (the defendant's superintendent) "say this gentleman, Frank V. Johnson, was?" he said, "From the insurance company." The learned counsel for the defendant thereupon moved for the withdrawal of a juror, on the ground that it had been revealed to the jury that the defendant was insured against accidents. No such thing anywhere appears in the record. But in the trial of accident cases against insured defendants the plaintiff's counsel is not obliged to shape his

course, and refrain from proper questions, so as not to reveal that the defendant is insured. The counsel for the insurance company and its investigators see the witnesses, bring them to their offices, and the company's office, and take their statements, and come into court openly and try the case, and yet seem to be under the strange notion that the jurymen do not know it, and that the plaintiff's counsel must avoid proper questions that would reveal it.

It is also urged that it was reversible error to admit in evidence the notice under the employer's liability act (chapter 600, p. 1748, Laws 1902), and for the trial judge to read to the jury section 3 of the said act and charge that it was applicable to the case—viz., the provision making the question whether continuance at work by the plaintiff after he discovered the danger from the neglect of the defendant by which he was hurt was negligence contributory to the injury, or an assumption of the risk by him, one for the jury—for two reasons: First, because the complaint did not allege any change in the law created by the said act as applicable to the case, or any particular fact making it applicable; and, second, because the evidence showed a liability, if any, under the common law unchanged by the said act.

As to the first, the complaint does not need to contain specific allegations of negligence, liability or benefit created by the act. The act changes or creates no rule of pleading. An action that comes or may come under its benefits is not what is called a statutory action. If the plaintiff's proofs do not bring the action under the benefits of the act the action cannot be dismissed for that reason; on the contrary, there may be a recovery under the common law. The plaintiff is not obliged to bind himself down in his complaint to a case that can rest only on the provisions of the act. The act makes only two changes of the common law rules of negligence, viz.: First, that the negligence of an employé whose whole or principal duty is that of superintendence shall be the negligence of the master, instead of that of a fellow servant only; second, that the continuance of an employé at work after he discovers a risk arising from the master's negligence shall not, as matter of law, be considered negligence or an assumption of the risk by him, but shall be a question of fact for the jury. To get the advantage of these changes, the notice required by the act must be served within 120 days and the action begun within a year. If both of these things were not done, then the advantages of the act cannot be taken. Now, the complaint does not have to allege anything to show that his case is or may be ruled by the said two substantive changes by the statute, except that he served such notice. It is enough that it allege—and it should only allege in order to be in scientific form—that the negligence alleged was by the defendant, leaving it to be shown by the evidence how it was his negligence, i. e., whether by his personal act or omission or by that of his superintendent, or in some other way. If by negligence of a superintendent, it is the negligence of the master; if by that of some fellow servant, it is not. A proper complaint is never of negligence of the defendant "by" his superintendent or "by" his agent, or any one, but simply alleges negligence of the defendant, leaving the evidence to show whether in per-

son or by or through another. Harris v. Baltimore Machine & Elevator Co., 112 App. Div. 389, 98 N. Y. Supp. 440; Riley v. McNulty, 115 App. Div. 650, 100 N. Y. Supp. 985. Our minds should not be drawn away from so plain a matter of pleading by inadvertent utterances to be found here and there.

As to the second, since the plaintiff recovered only on common law negligence, namely, the failure to furnish a signalman, accompanied by lack of light, the admission of the notice in evidence was, if an error, an entirely harmless one. And as under the common law the question of the negligence or assumption of risk of the plaintiff was under the facts in this case a question of fact for the jury, the charge of the learned trial judge that the statute made it such a question of fact, was, if an error, an entirely harmless one. The law made it a question for the jury, and whether statute or common law is unimportant. But the learned trial judge was not in error, harmless or otherwise, in charging that the said provision of the statute was applicable to the case. It is as follows:

"In an action maintained for the recovery of damages for personal injuries to an employé received after this act takes effect, owing to any cause for which the employer would otherwise be liable, the fact that the employé continued in the service of the employer in the same place and course of employment after the discovery by such employé, or after he had been informed of, the danger of personal injury therefrom, shall not, as matter of law, be considered as an assent by such employé to the existence or continuance of such risks of personal injury therefrom, or as negligence contributing to such injury."

An injured employé may give the notice prescribed by the act and bring his action within the time limited by the act, for the sole purpose of getting the benefit of this particular change of the common law rule—if, indeed, the change is not one of general application, regardless of the giving of notice and commencing the action within the time specified by the act, as seems to be plainly intimated in Rice v. Eureka Paper Co., 174 N. Y. 397, 66 N. E. 979, 62 L. R. A. 611, 95 Am. St. Rep. 585. If the requirement of the notice, and the action be brought within a year be taken out of the act—and they seem to have been an interlineation—there is left a plain, consistent and workable act of general application. These two requirements contract and distort the act, and gave rise to the decisions of the courts that actions might be brought without giving the notice, and not subject to the said short limitation, but that the benefits of the act would not apply to them. The resulting confusion will continue until the said two requirements be taken out of the act and it thereby becomes one of general application.

The foregoing covers every point presented for the appellant; but it is pointed out among us that there is an exception to a refusal of the trial judge to charge a request of the defendant "that there is no evidence in this case to warrant a finding that there was any defect in the ways, works or machinery furnished by the defendant which in any way contributed to this accident." The learned counsel for the appellant has presented no such point to us orally or in his brief, and

the brief for the respondent is properly confined to answering the points presented by the brief for the appellant. I am therefore unwilling to vote to reverse on the ground of such refusal, even if it appear to be an error. Counsel for the respondent has had no opportunity to discuss it. Our rule requiring the appellant's brief to be filed in advance of the argument so that the respondent may know the grounds on which a reversal is to be asked for, and answer them, is a very misleading one if we are to search for and reverse on errors not presented to us by counsel for appellants. There may be exceptional cases where that should be done for the sake of justice and so that wrong may not result from neglect or ignorance, but this is not such a case. And if the point had been presented to us, it would have to be observed that nowhere, in the complaint, the bill of particulars, by the evidence, or during the course of the trial, did the plaintiff claim that there was any defect in the "ways, works and machinery," or any negligence whatever, other than that the defendant failed to furnish sufficient light, and the said signalman, or else some warning by whistle or bell of the swinging of the bucket. That being so, the request was irrelevant, and therefore properly refused. Moreover, may not the absence of light be properly called a defect in the "ways, works and machinery"? I am unwilling to vote otherwise without being first aided by argument at our bar. The phrase is a comprehensive one, new to our legal terminology, and far from being fully developed and defined. The same observations are applicable in respect of the absence of a warning bell or whistle in lieu of a signalman. It is said that the request was made necessary because the learned trial judge read section 1 as well as section 3 of the said statute, and said it was applicable. But on a reading of the whole charge it will be seen that he submitted to the jury no question of negligence except in respect of the absence of a signalman, or of a warning bell or whistle, and the lack of light. It were far better if charges always presented the precise questions of fact to be decided, instead of being mere legal essays or statements of abstract principles, but perfection is not of this world. A point was presented that the employer's liability act had no application at all to the case, but that is quite another thing. In place of pointing out the specific error being now discussed, it drew the mind away from it. It is also true that near the end of his charge, and after having stated the said questions of negligence involved, the learned trial judge, in summarizing, stated as a question whether the defendant furnished the plaintiff a safe place to work. But this again had reference to the said lack of light, etc., and lack of light may make a place unsafe. The charge may lack precision, but we must take it as a whole. The question was, after all, whether the lack of light was a source of danger to the plaintiff, and whether you say it made his place of work an unsafe one, or express it otherwise, does not change the substance. And here, again, the point was not presented to us, and should not be considered. The learned counsel for the respondent was not called upon to argue it by counsel for the appellant, and had no reason or occasion to argue it.

This case was long and laborious, tried with marked ability by

counsel, and should not be reversed except for some error presented to us.

The judgment should be affirmed.

RICH, J., concurs.