(155 App. Div. 545.)

FELCIN v. SOCIETY OF THE NEW YORK HOSPITAL.

(Supreme Court, Appellate Division, First Department. March 14, 1913.)

1. MASTER AND SERVANT (§ 252*)—INJURIES TO SERVANT—EMPLOYER'S LIABILITY ACT—NOTICE—SUFFICIENCY.

A notice, directed to defendant, recited that the subscriber had been injured while in defendant's employ on a given date, while working in defendant's laundry, in connection with a wringing machine which defendant was charged to have maintained in a defective condition; that the subscriber's arm was caught in the machinery and torn from the body; that he received a serious and permanent shock to his nervous system; that the injury was caused without negligence on his part, but solely by defendant's negligence, in that defendant failed to furnish a reasonably safe place, appliances, ways, works, apparatus, and machinery in connection with the work, and failed to reasonably safeguard and inspect the same, and in knowingly employing an incompetent foreman, and in failing to formulate and promulgate rules, etc. *Held* a sufficient compliance with the Employer's Liability Act (Consol. Laws 1909, c. 31, §§ 200–204).

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 806; Dec. Dig. § 252.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. MASTER AND SERVANT (§§ 288, 289*)—INJURIES TO SERVANT—EMPLOYER'S
LIABILITY ACT—EFFECT.

The Employer's Liability Act (Consol. Laws 1909, c. 31, §§ 200–204),
with reference to injuries to servants within its terms, not only abolished
the fellow-servant rule so far as employés exercising superintendence
were concerned, but required submission to the jury as a question of fact
whether the employé understood and assumed the risk of injury, or was
guilty of contributory negligence by his continuance in the same place
and course of employment with knowledge of the risk of injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§
1068–1088, 1089, 1090, 1092–1132; Dec. Dig. §§ 288, 289.*]

3. MASTER AND SERVANT (§ 288*)—INJURY TO SERVANT—ASSUMED RISK.

Where plaintiff, who was employed in the laundry of a hospital, called
the attention of his superior to a defect in one of the machines, and
such superior recognized the danger and promised to repair it within a
short time, but plaintiff was injured three days thereafter by reason
of the defect, he did not assume the risk as a matter of law, independ-
ent of the Employer's Liability Act (Consol. Laws 1909, c. 31, §§ 200–204).

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§
1068–1088; Dec. Dig. § 288.*]

4. MASTER AND SERVANT (§ 289*)—INJURIES TO SERVANT—CONTRIBUTORY NEG-
LIGENCE—QUESTION FOR JURY.

Whether plaintiff was guilty of contributory negligence at common law
in continuing to operate a machine was for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089,
1090, 1092–1132; Dec. Dig. § 289.*]

Appeal from Trial Term, New York County.

Action by John Felcin against the Society of the New York Hospi-
tal. From a judgment dismissing the complaint, at the close of plain-
tiff's case, he appeals. Reversed, and new trial ordered.

See, also, 134 App. Div. 970, 119 N. Y. Supp. 1125.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE,
SCOTT, and DOWLING, JJ.

Thomas J. O'Neill, of New York City (L. F. Fish, of New York
City, on the brief), for appellant.

Austen G. Fox and Wilson M. Powell, both of New York City
(Wilson M. Powell, Jr., of New York City, on the brief), for respond-
ent.

CLARKE, J. The action is to recover damages for the loss of
plaintiff's right arm, which was torn off at the socket in a centrifugal
laundry machine operated by power. The complaint alleges service
of the notice required by the Employer's Liability Act. The plain-
tiff was 22 years of age and earning $24 a month and board at the
time of the accident. He was employed June 25, and the accident oc-
curred July 9, 1907. He had never, up to this time, worked in a steam
laundry and was not familiar with any kind of machinery. He an-
swered an advertisement for a "porter wanted to work around a steam
laundry," and saw Mr. Robertson, who, it was admitted, was the as-
sistant superintendent of the defendant at that time.

Plaintiff testified:

"Mr. Robertson told me he would send me up to Mr. Horton, and, if Mr.
Horton approved of me, why it would be all right and Mr. Horton would

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

put me to work.  Mr. Robertson sent for the head porter, who brought me up to Mr. Horton.  Mr. Horton asked me if I had ever worked around a laundry.  I told him, 'No.'  Mr. Horton talked to me.  He said, 'I think you are all right.'  He said, 'You go to work,' that is all, and I worked there from that time, as a result of that conversation with Mr. Horton, until the time I was injured.  In those two weeks that I worked in the hospital, before I was injured, Mr. Horton gave me all my orders.  I saw him (Horton) giving orders to all the employés in the laundry.  I never saw anybody else give orders in the laundry to any of the employés except Horton.  When I went up there this first day, after Mr. Horton put me to work, it was Mr. Horton who showed me how to run the machine."

Horton was put on the stand by plaintiff in connection with the attempt to prove that there was no deceit intended in the notice.  Horton testified that he was present in the laundry when the plaintiff was injured.  Under cross-examination by the defendant:

"Your position was that of laundryman, was it not?  It was.  Carried on the rolls as such?  Yes.  And in no other capacity?  That is all.  A fellow laundryman with the plaintiff?  Yes.  Did you have any authority to employ or discharge men in the hospital?  No, sir.  Did you as a matter of fact either employ or discharge persons working in any way for or in connection with the hospital?  No, I did not."

On redirect examination, he was asked referring to the testimony on the prior trial:

"Q. Do you remember that Judge White asked you this question: 'Q. Who was in charge of the work of the laundry on that day, the day of the accident?  The witness: I was.'  Was that true?  A. Yes.  Q. You said that?  A. Yes.  Q. And you were in charge of the laundry the day you saw this man's arm injured, is that right?  A. I was on the floor, yes, in charge of the floor."

This testimony presented a question of fact as to Horton's relation to the defendant and to the plaintiff.  He was plaintiff's superior at least.  It was upon his judgment that plaintiff was employed.  He gave all the orders in that department of service and instructed him in the operation of the machines.

The machine at which plaintiff was put to work consists of a steel basket inside of a metal covering and is revolved by power at a rate of 1,800 revolutions a minute.  It is started by pulling out a knob which presses on a spring which shifts the belt transmitting the power from a loose pulley to the tight pulley.  The plaintiff testified that there were a number of these washing machines and that they had a rocking motion which causes the floor to vibrate.  There were three of them on this floor.  The machine was started by pulling out the knob referred to and stopped by pushing it in.

"When I worked the first day, why two of these extractors, if you pulled a knob out, they would come out with a snap, and it would stay out, and if you shut it it would stay in.  While on this third machine, the one I was hurt on, you would keep shaking it in and out, the way you pleased.  It would never stay there the way you put it.  Q. You mean it was loose as distinguished from the others?  A. It was loose.  Q. And from the first day you were hired, when you saw that one of them, the knob on one of the machines was loose, did you speak about it to Mr. Horton?  A. Yes.  Q. What did you say to him on that first day you were hired, and what did he say to you?  A. I said to Mr. Horton, I said: 'Look at this knob; it is loose.'  I said. 'How is it the other two is tight?'  He said, 'I know

that it has been like that for a year,' he said, 'but it never hurt anybody, so go ahead and work at it.' I worked on it off and on until the time I was injured. * * * This extractor with the loose knob is the one I was injured on. * * * Some time before I was hurt I was pushing one of these truck tubs or rollers, as they call them, towards this machine after taking the clothes out of one of the washers, and it was about two feet away from me I saw the machine start of itself. I went over and told Mr. Horton. He looked at it. He said, 'I know, that thing is getting worse all the time.' He said, 'I will get it fixed within a week.' Q. Had you just stopped that some time before? A. About 20 minutes before that, when I took the last clothes out. Q. And nobody started it up, but it started itself? A. Why no. Q. What day was this you say this thing started? A. On the Friday before the Tuesday I was hurt. Q. Did you believe him when he said he would have it repaired? A. Yes. * * * When Mr. Horton told you he would have the machinery repaired within a week, did you rely on what he told you? A. Yes. I came to work at 7 o'clock that morning, worked probably about half an hour; I just was through washing the clothes. Mr. Horton ordered me to take out the maids' clothes out of the washing machine and put them in this truck roller, or truck tub, and put them in the extractor. Of course, I obeyed this order and put them in the extractor, was putting them in, probably about five or six handsful in, and the machine started in, by this knob coming out, and it took my arm off, so quick I did not know it was ever off, until I felt a pain in my shoulder. I started to walk towards Mr. Horton. He started to run towards the machine. Then I fainted and didn't know any more."

An expert testified as to the construction and operation of the machines.

At the close of plaintiff's case, the court, after striking out the notice, granted defendant's motion to dismiss the complaint, saying:

"Because, upon plaintiff's own statement here, he knew the dangers and risks of operating this machine; he discovered the defect of the knob; he also knew thoroughly well the dangers of operating it; notwithstanding that, he continued to operate it. I think that brings it within the rule of assumed risk. The fact that he communicated the danger to Mr. Horton does not absolve him, because there is no evidence here that Mr. Horton occupied a position which would make notice to him notice to his employer."

I think it was error to strike out the notice.

[1] The notice is as follows:

"To the Society of the New York Hospital, 7 West 15th Street, New York City—Sirs: Please take notice that I, the undersigned, was injured while in your employ on July 9th, 1907, while working in the laundry in connection with a laundry wringing machine, which you maintained in a defective condition, and that my arm became caught in said machinery and was torn from my body, and I sustained a serious and permanent shock to my nervous system. That said injuries were caused without any negligence on my part in any wise contributing thereto, but solely by your negligence, in that as my master, you failed to furnish me with a reasonably safe place, appliances, ways, works, apparatus and machinery in and in connection with which 'to work. and failed to reasonably safeguard, inspect and keep safe the same, and in that you knowingly employed and retained incompetent foremen and coworkmen to guide, direct and assist me in the performance of my work, and in that you failed to formulate, promulgate and enforce proper rules and regulations for my safety and the safety of said coemployés, and in that your employés charged with and exercising superintendence over me, negligently and carelessly conducted themselves in and in connection with said acts of superintendence, as a result of all of which my arm became caught in certain laundry machinery maintained by you, and my said arm was torn from my body, as aforesaid."

This notice sufficiently complied with the provisions of the Employer's Liability Act. It designated the time and place of the accident and pointed out a defective laundry wringing machine at which plaintiff was working and in which his arm was caught, as the cause of the injury, and specified the negligence of the master in failing to furnish him with reasonably safe apparatus and machinery with which to work, and to reasonably safeguard, inspect, and keep safe the same.

This is more specific and definite than the notices sustained in Bertolani v. United Engineering & C. Co., 198 N. Y. 71, 91 N. E. 267, and Smith v. Milliken Brothers, Inc., 200 N. Y. 21, 93 N. E. 184, and does not exhibit the vice of indefiniteness condemned in the notice under review in Logerto v. Central Building Company, 198 N. Y. 390, 91 N. E. 782. It was error, therefore, to grant the motion of the defendant to strike out the notice, and so to dispose of the action as not within the provisions of the Employer's Liability Act.

[2] That act made two important changes in the law. Where a personal injury is caused to an employé by reason of any defect in the condition of the ways, works, or machinery which arose from or had not been discovered or remedied owing to the negligence of the employer, or of any person in the service of the employer and intrusted by him with the duty of seeing that the ways, works, and machinery were in proper condition, the rule was established that an employé by entering upon or continuing in the service of the employer shall be presumed to have assented to the necessary risks of the occupation or employment and no others, which risks were defined to be those only which were inherent in the nature of the business which remain after the employer has exercised due care in providing for the safety of his employés, and has complied with the laws affecting or regulating such business or occupation for the greater safety of such employés.

In an action to recover for injuries received owing to any cause for which the employer would otherwise be liable, the fact that the employé continued in the service after the discovery of the danger shall not, as a matter of law, be considered as an assent by such employé to the existence or continuance of such risks of personal injury therefrom, or as negligence contributing to such injury. The question whether the employé understood and assumed the risk of such injury, or was guilty of contributory negligence by his continuance in the same place and course of employment, with knowledge of the risk of injury, shall be one of fact. The other change was abolishing the fellow-servant rule so far as employés exercising superintendence were concerned.

In Proctor v. Rockville Center M. & C. Co., 205 N. Y. 508, 99 N. E. 81, it was urged that subdivision 1 of section 1 of the act, which relates to liability for defects in the ways, works, and machinery, does not create any liability on the part of the employer which did not exist at common law, and therefore there was no necessity for providing, and it could not have been the intention of the Legislature to provide, that an action to enforce such liability should be brought under the act. Judge Hiscock said:

"The statute likewise modified the defense of assumption by an employé of risks flowing from the default of the employer by providing that the

question of such assumption should not in any case be one of law but should be one of fact. That provision, as already stated, presents the practical consideration involved in this appeal because the appellant assumes that except for it the respondent would be chargeable with assumption of risk as matter of law. * * * If this last provision does not confer its advantages generally and literally on any and every negligence action brought by an employé against an employer after the statute took effect, it must be because, by fair implication, it refers only to such actions as are especially enumerated or referred to in the statute. The former and broader construction has been urged but has been overruled (Simpson v. Foundation Co., 132 App. Div. 375, 116 N. Y. Supp. 878; s. c., 201 N. Y. 479, 95 N. E. 10, Ann. Cas. 1912B, 321), and therefore naturally the remaining conclusion followed, that it does apply to that class of cases enumerated in section 1 and to which the present action belongs. The result of this interpretation is that the statute gives to respondent certain advantages in bringing under it an action based on facts which, it may be assumed for the purposes of this appeal, also constituted a cause of action at common law but without those advantages. I know of no case or principle which prevented this. The Legislature had a perfect right to thus give an injured employé an election between two courses, and especially in this case it is to be observed that it exacted as a condition of pursuing the more favorable one that he should give the notice prescribed by the statute for the benefit of the employer."

[3] Irrespective of the Employer's Liability Act, facts were shown constituting a cause of action at common law. In Rice v. Eureka Paper Co., 174 N. Y. 385, 66 N. E. 979, 62 L. R. A. 611, 95 Am. St. Rep. 585, after an exhaustive review of the state and federal decisions, Judge Werner said, for a unanimous court:

"Thus it will be observed that the text-writers upon the law of negligence almost without exception, and a great majority of the reported decisions in other jurisdictions, support the doctrine that if a servant, who has knowledge of the defects in appliances and machinery from which danger is to be apprehended, is induced to continue in the employment by the promise of the master to repair the defect, the risk during the running of the promise and for a reasonable time thereafter is that of the master and not of the servant."

One of the cases cited is Healy v. Ryan, 25 N. Y. Wkly. Dig. 23, affirmed without opinion 116 N. Y. 657, 22 N. E. 1130:

"He notified the foreman who had authority to make repairs, and who promised to make them. On appeal to the General Term of the Fourth Department, it was held that the question of notice to the defendant and the promise to repair were properly submitted to the jury as bearing upon the question of plaintiff's freedom from contributory negligence."

In Johnston v. Fargo, 184 N. Y. 379, 77 N. E. 388, 7 L. R. A. (N. S.) 537, 6 Ann. Cas. 1, the court held that an express contract in writing under which an employé agreed that he would assume all the risks of accidents or injury which he should meet with or sustain in the course of such employment, whether occasioned by the negligence of said company or any of its members, officers, agents, or employés, or otherwise, was void as against public policy.

And in Fitzwater v. Warren, 206 N. Y. 355, 99 N. E. 1042, the court, reversing the doctrine of Knisley v. Pratt, 148 N. Y. 372, 42 N. E. 986, 22 L. R. A. 367, hold that public policy precludes an employé from assuming the risk created by a violation of the statute requiring dangerous machinery to be guarded, or waiving liability of

the master for injuries caused thereby, and citing Johnston v. Fargo, supra; said:

"If an express agreement could not relieve the master in the case cited, it does not seem clear how, by a merely implied contract, he can be relieved from the results of a direct violation of the statute."

In Drake v. Auburn City Railway Co., 173 N. Y. 466, 66 N. E. 121, the court said:

"The rule of the assumption of obvious risks does not rest wholly upon the implied agreement of the employé, but on an independent act of waiver, evidenced by his continuing in the employment with a full knowledge of all the facts."

The logical projection of the Fitzwater Case would seem to dispose of the doctrine of assumed risk entirely as a matter of law, for if, by the Johnston Case, an express contract to relieve the employer of all liability for his negligence is against public policy, and if by the Fitzwater Case the implied contract to relieve the employer of liability for his negligence in failing to provide the safeguards provided by statute law is likewise against public policy, why is it not equally against public policy, as now declared, to sustain the implied contract and waiver to relieve the employer of his liability for negligence in the performance of the duties laid upon him by common law as well as by statute?

Here was a defective machine; the master had failed in its duty to properly inspect, safeguard, and repair it. To be sure, the plaintiff had discovered the defect, had called it to the attention of his superior, the only agent of the defendant corporation who personally gave him orders or who was in control of the department of service in which he was engaged, and that superior had recognized the defect and the danger and had promised to repair it. In the light of the foregoing cases, it is impossible to hold; it seems to me, as a matter of law, that the plaintiff had contracted with the defendant to assume the risk of operating that machine in its dangerous condition of disrepair, and had agreed, as matter of law, that if he was injured in the performance of the defendant's work by that machine he would hold it harmless.

[4] Whether or not he was guilty of contributory negligence, under the circumstances, in operating the machine, is a question of fact for submission to the jury. So that, it seems to me, in any aspect of this case, the plaintiff had made out a prima facie case, and it was error to dismiss the complaint.

It follows therefore that the judgment appealed from should be reversed, and a new trial ordered, with costs and disbursements to the appellant to abide the event. All concur.