3 N.Y.2d 780 (1957)
Fred Garlichs, Appellant,
v.
Empire State Building Corp., Respondent, et al., Defendants.
Court of Appeals of the State of New York.
Argued April 4, 1957.
Decided May 23, 1957.
Daniel Kirchman, Matthew Vener and Sidney R. Siben for appellant.
Patrick E. Gibbons and Royce A. Wilson for respondent.
Concur: DESMOND, DYE, FULD and VAN VOORHIS, JJ. FROESSEL, J., dissents in the following opinion in which CONWAY, Ch. J., and BURKE, J., concur:
*781 Judgment affirmed, with costs, upon the memorandum opinion of the Appellate Division.
FROESSEL, J. (dissenting).
This is an action to recover damages for personal injuries. Plaintiff was employed as a window cleaner by the Terminal Window Cleaning Company, which had a contract to clean the windows of the Empire State Building, owned, operated and controlled by Empire State Building Corp. (hereinafter called defendant). He had been working as a window cleaner for approximately 20 years, and in the Empire State Building for approximately 6 to 8 years.
Plaintiff worked under the general direction of the assistant custodian of the building, Corbett, who was an employee of defendant, and who told plaintiff in which rooms to clean windows. Plaintiff and one Jablonsky customarily cleaned as a team, covering the section of windows assigned to them about twice every month. It was plaintiff's duty to clean the outside as well as the inside of each window. In order to do this it was necessary for him to open each window and climb outside.
In the course of this work, a window would at times "stick" and not open easily. In such event, plaintiff was instructed by defendant "not to fool around with that window", to "leave it alone", "not to touch the window", and to report it either *782 to Corbett or to the chief building carpenter, Brown. Upon such a report, Brown's department would normally repair the window within a day.
Early in December, 1950, about two weeks before the accident, plaintiff found that a certain window in suite 4719 on the 47th floor would not open. According to his instructions, plaintiff skipped the window and reported to Corbett, who told him that he was "going to take care of it". Neither Corbett nor Brown had any record available of such report, which records were kept for short periods, and neither was able to recall whether this particular report had been made.
On December 21, 1950, plaintiff was again directed by "a slip * * * in the locker room" to clean the windows on the 47th floor. The windows in suite 4719 had recently been painted, but "the paint was dry". Plaintiff found that they all stuck a little when opened, although his coworker, Jablonsky, experienced no such difficulty  they could be opened "without a strain". The window which plaintiff had previously reported as defective was located about three feet off the floor behind a radiator extending about one half foot from the window. Plaintiff, knowing that this was the same window which he had previously reported, reached across the radiator and, while using an "ordinary amount of strength", he felt a sharp pain in his back and his legs went numb. The accident was witnessed by Jablonsky.
Plaintiff's doctor examined him on the day of the accident and found that he had sustained a severe back sprain, severe paresthesia of the right leg, and also concluded he "was dealing with a herniated disc". The doctor expressed the opinion that these injuries created a permanent disability, and that they could have been caused by plaintiff's attempt to lift the window. Though plaintiff was examined by defendant's physician, the latter was not called to testify.
Plaintiff, as already indicated, was the employee of an independent contractor, which was employed by defendant to work on its building. Defendant consequently owed to plaintiff the same duty of exercising reasonable care to furnish him with a safe place to work and safe equipment to work with as it owed to its own employees (Circosta v. 29 Washington Sq. Corp., 2 N Y 2d 996; Haefeli v. Woodrich Eng. Co., 255 N.Y. 442, 448; Caspersen v. La Sala Bros., 253 N.Y. 491, 494; Dougherty v. Pratt Inst., 244 N.Y. 111, 113; *783 McLean v. Studebaker Bros. Co., 221 N.Y. 475, 477-478; Hess v. Bernheimer & Schwartz Pilsener Brewing Co., 219 N.Y. 415, 418; Wohlfron v. Brooklyn Edison Co., 238 App. Div. 463, 465, affd. 263 N.Y. 547; Labor Law, § 200; cf. Koenig v. Patrick Constr. Corp., 298 N.Y. 313, 317). The trial court's charge was obviously based on this view of the law, for he charged negligence and contributory negligence, without exception. The record contains sufficient evidence to support a jury verdict that defendant violated this duty. Defendant was notified approximately two weeks before the accident that the window at which plaintiff was eventually injured would not open. With such knowledge, defendant's duty to provide a safe place to work included a duty to repair this window. In fact, plaintiff was assured that this would be done. Under those circumstances, it cannot be said as a matter of law that the risk reasonably to be perceived from the neglect of defendant's duty to repair the window could not be that someone would be injured in an attempt to open the window, even by the use of ordinary strength, particularly in view of its location and where defendant's admitted practice was to make such repairs promptly.
It is true, as the Appellate Division points out, that it was not part of plaintiff's employment to "open" windows which were stuck; in fact, he received instructions not to do so. However, it was part of plaintiff's employment, to which defendant's duty of providing safety extended, to make an attempt, by using ordinary strength, to open each window which he was to wash  otherwise he would never wash any. Plaintiff could not possibly know that the window would not open before employing a reasonable effort to do so, a fact as to which the Appellate Division memorandum is silent. The Trial Judge had this clearly in mind, for, when defendant made its motion to dismiss at the end of the case, the court said: "Well, I am going to deny your motion for this reason. I think it is a question of fact. I do not believe there is any testimony in the record to show that he could have discovered that the window did not stick without trying. Now, I am not able to answer that as a question of law." It follows that the jury could have found that plaintiff was injured in making a reasonable attempt to open the window, which defendant, on ample notice, neglected to repair, thereby creating the very hazard which was the proximate cause of the accident.
*784 Defendant contends that plaintiff is nevertheless barred from recovery because he was contributorily negligent, and also because he assumed the risk of stuck windows as a part of his employment. The trial court properly submitted the issue of contributory negligence to the jury, which determined it in favor of plaintiff. We cannot find that there was contributory negligence as a matter of law. Plaintiff had no knowledge that the defect, which he had reported two weeks previously, still existed. He had been assured that it would be repaired, and had the right to assume that this had been done. The practice, according to defendant's own witness, was to make such repairs within 24 hours, and to keep all windows in repair so that they "can be lifted by any young girl in an office or work free"; the "purpose is that those windows have to be eased up so anybody can open and close them". In this fact setting, and in the absence of knowledge that the window was stuck, it was plaintiff's duty to make an attempt to open it in order to perform the work which he was directed to perform. There is no evidence that plaintiff did this in a negligent manner or, as in the cases relied on by the Appellate Division (Shields v. New York Central & Hudson R. R. R. Co., 133 N.Y. 557; Cullen v. National Sheet Metal Roofing Co., 114 N.Y. 45), that he violated defendant's instructions. There is ample evidence that plaintiff was not trying to open the window contrary to his instructions, but was merely applying ordinary strength to it before he found out that it would not open. Indeed, no evidence to the contrary was offered.
Whether or not plaintiff assumed the risk of injury from stuck windows in general, we cannot find as a matter of law that he assumed the risk of injury from this particular window. The danger was not obvious. The jury had the right to infer that the painting was not responsible for the sticking of the window in question, for none of the other newly painted windows presented such difficulty. Since defendant had notice that the window was defective, and its conceded practice was to repair promptly, plaintiff had the right to assume that defendant would not negligently fail to perform its duty to repair and did not assume the risk of defendant's negligence (Eastland v. Clarke, 165 N.Y. 420, 427, 428). In any event, a jury could find that plaintiff was relieved of an assumed risk by defendant's promise to repair the window and thus remove the danger *785 which created the risk (Rice v. Eureka Paper Co., 174 N.Y. 385, 396, 397; Long v. Fulton Contr. Co., 140 App. Div. 685, 687, affd. 208 N.Y. 540; Felcin v. Society of N. Y. Hosp., 155 App. Div. 545, 552, 553; see Yaconi v. Brady & Gioe, Inc., 246 N.Y. 300, 304-305; Pellegrino v. Smith Co., 226 N.Y. 165). The trial court made no specific charge on the issue of assumption of risk. Since defendant took no exception and made no request for any other charge, it cannot now claim that this failure to charge constitutes error (see Haefeli v. Woodrich Eng. Co., 255 N.Y. 442, 446, supra).
The judgment appealed from should be reversed and a new trial ordered, with costs to abide the event.
Judgment affirmed, etc.