ANNA S. HAEFELI, as Administratrix of the Estate of EDWARD HAEFELI, Deceased, Appellant, *v.* WOODRICH ENGINEERING COMPANY, INC., et al., Respondents.

(Argued January 14, 1931; decided February 10, 1931.)

*Joseph M. Proskauer, J. Alvin Van Bergh, Jesse L. Rosenberg* and *Irving Ditchik* for appellant. Defendants were responsible for the negligent construction and maintenance of the cesspool and cannot evade liability behind the so-called independent contractor. (*Hooey* v. *Airport Construction Co.,* 253 N. Y. 486; *Mortensen* v. *Magoba Constr. Co.,* 248 N. Y. 577; *Caspersen* v. *La Sala Bros.,* 253 N. Y. 491; *McNamara* v. *Eastman Kodak Co.,* 220

N. Y. 180.) The court's charge was a correct statement of the law. (*Storms* v. *Lane*, 223 App. Div. 79; *Terranova* v. *City*, 158 App. Div. 489; *Hansen* v. *N. Y. Dock Co.*, 159 App. Div. 866; *Muhlens* v. *Obermeyer*, 83 App. Div. 88; *Schmit* v. *Gillen*, 41 App. Div. 302; *Zurich General Accident Co.* v. *Childs Co.*, 253 N. Y. 324.) The evidence was sufficient to justify the submission of the liability of the individual defendant to the jury. (*Page* v. *Dempsey*, 184 N. Y. 245.)

*James C. Van Siclen, Edgar J. Treacy* and *William F. Ryan* for respondents. Plaintiff not only failed·to show negligence on the part of the defendants but proved contributory negligence on the part of plaintiff's intestate. (*Schrader* v. *N. Y. C. & St. L. R. Co.*, 254 N. Y. 148; *Adams* v. *Bullock*, 227 N. Y. 208; *Van Leet* v. *Kilmer*, 252 N. Y. 454; *Troidle* v. *Ad. P. & L. Co.*, 252 N. Y. 483; *Palsgraf* v. *L. I. R. Co.*, 248 N. Y. 339; *Latini* v. *Zavodnick* 254 N. Y. 346; *Hexamer* v. *Webb*, 101 N. Y. 377; *Besner* v. *Central Trust Co.*, 230 N. Y. 357; *Schaefer* v. *De Neer, gaard*, 196 App. Div. 654; *Martin* v. *Petit*, 117 N. Y. 118; *Trustees of Canandaigua* v. *Foster*, 156 N. Y. 354; *Kirby* v. *Newman*, 239 N. Y. 470.) The trial court erred·in the admission and exclusion of evidence. (*Noah* v. *Bowery Savings Bank*, 225 N. Y. 284; *Dougherty* v. *Milliken*, 163 N. Y. 527; *Van Wycklen* v. *City of Brooklyn*, 118 N. Y. 424; *Ferguson* v. *Hubbell*, 97 N. Y. 507.) The trial court's charge was inadequate, prejudicial and erroneous. (*People* v. *O'Dell*, 230 N. Y. 481; *Trulock* v. *Kings Co. Foundry*, 216 App. Div. 439; *Herka Realty Co.* v. *La Salle Mil. Academy*, 229 App. Div. 668; *Matter of Taylor*, 197 App. Div. 865.)

KELLOGG, J. Edward Haefeli and Arnold McDonald, partners in the scavenger business, contracted to clean a cesspool maintained by the Woodrich Engineering Co., Inc. While Haefeli was stationed in the cesspool shoveling the sludge into pails, the arched top·of the cesspool

fell in, causing his death. This action was thereafter brought, by the administratrix of the estate of Edward Haefeli, to recover damages for his death, against the Woodrich Engineering Company and its piesident, Philip H. Dein. The complaint charged these defendants with negligence in the construction and maintenance of the cesspool. A verdict for a substantial sum was recovered against both defendants.

On an appeal to the Appellate Division, that court handed down a memorandum of decision reversing the judgment entered upon the verdict " upon the law and the facts," and granted a new trial. The memorandum stated: " We are of opinion that the charge, in its entirety, failed to state adequately the duty of the defendants with respect to the maintenance of the cesspool and the duty of the decedent in using it." (229 App. Div. 742). Subsequently, the order of reversal was resettled to read that the judgment was " reversed upon the law, and a new trial granted," and judgment was entered accordingly. (229 App. Div. 749).

There is no rule of the common law, and in this State no statutory command, requiring a trial judge to give instructions to a jury in a civil case in respect to every legal proposition which may be pertinent to the issues. (*Jones* v. *State of Ohio,* 20 Ohio, 34; *State* v. *Straw,* 33 Me. 554; *Kent* v. *Tyson,* 20 N. H. 121; *Hall* v. *Weir,* 1 Allen, 261; *Davis* v. *Elliott,* 81 Mass. 90; *Bain* v. *Doran,* 54 Penn. St. 124; *Pennock* v. *Dialogue,* 2 Peters [U. S.], 1; *Parsons* v. *Brown,* 15 Barb. 590.) " In general, then, while misdirection is error, non-direction is not." (Thompson on Trials, vol. 2, § 2346.) The English courts hold that " non-direction is only a ground for granting a new trial where it produces a verdict against the evidence." (*Great Western Railway Co.* v. *Fawcett,* 8 Law Times Rep. 31.) Doubtless an appellate division, for lack of a charge or its insufficiency, upon an appeal from an order denying a new trial, deeming that a fair trial has not been had,

may in its discretion reverse and order the case retried. (*McKellar* v. *American Synthetic Dyes*, 229 N. Y. 106; *Muldoon* v. *Dock Contractor Co.*, 199 App. Div. 733; *Haas* v. *King*, 216 App. Div. 821.) However, no error of law is involved unless the trial judge, upon a specific request, has declined to give appropriate instructions. Consequently, the reversal here, expressed to be " upon the law," may not be sustained, unless for error (1) in denying a motion to dismiss, (2) in receiving incompetent or rejecting competent evidence, or (3) in delivering incorrect instructions or refusing to charge correctly.

The cesspool, through the collapse of which Haefeli met his death, was circular in form with an arched top. Its greatest diameter was eight feet; its depth was fifteen feet. It was walled up with round or oblong stones, without cement, for a height of seven feet. From this point upward the walls of the structure were made to taper in to form an arch or dome. Round or oblong stones were employed to make the arch, as they had been to form the walls below. At the center of the arch an opening or manhole two feet square was made to appear. Over the manhole a flagstone was placed; over the arch and flagstone, after the structure had been completed, dirt to the depth of three feet, a mass totaling ten tons in weight, was piled. Several witnesses testified that the stone, taken from the cesspool after the cave in, showed no signs that concrete had been applied when they were laid in the arch. Others saw traces of cement upon some of the stone. A witness who superintended the construction of the cesspool on behalf of the Woodrich Engineering Co., Inc., said that concrete had been applied. What the quantities were; what proportion of cement the mixture contained; how the mixture was applied — to these questions the record supplies no answer. It has been said that " Buildings, properly constructed do not fall without adequate cause," (*Mullen* v. *St. John*, 57 N. Y. 567, 569); that a " falling wall is evidence that there

was negligence on the part of some one " (*Hooey* v. *Airport Construction Co.*, 253 N. Y. 486, 489). In the absence of earthquake, storm, tempest or external violence of any kind (*Mullen* v. *St. John, supra*), the arch of the cesspool must have fallen because it was defectively constructed to bear the load which was placed upon it.

It is undisputed that the semi-solids contained in a leeching cesspool must frequently be removed; that cleaners must frequently descend into the cesspool to shovel the sludge into pails that it may be removed. The constructor of the cesspool must reasonably anticipate that these things will be done and must reasonably provide for the safety of those who do them. It is said that the constructor, in this instance, could not reasonably have anticipated that the cesspool would be entered by means of a ladder, as Haefeli entered it; and, therefore, was not required to make the cesspool safe for such an entry. This suggestion is based upon the testimony of a single witness who said that the usual method of entry was by means of a rope held by men standing at the brink of the manhole rather than by a ladder. The sole reason which the witness gave for this practice was the avoidance of a danger that the foot of an inserted ladder might strike the uncemented stones of the vertical walls and cause them to be dislodged. In our case it is undisputed that the ladder which Haefeli descended was inserted and held in a position almost vertical. Consequently, the peril to which the witness made allusion was in this instance avoided. No testimony was given to indicate that the weight of a man, descending upon a ladder held in a position almost vertical, will create a thrust against the side of the manhole, causing a greater strain upon the arch than the vertical thrust, which would be caused by the weight of several men standing at the edge of the opening to lower a cleaner upon a rope. Moreover, in opposition to the testimony thus given, the city inspector, by whom permits for the

cleaning of cesspools were given, stated that while the department did not advocate the use of a ladder " we do not say they must not use it, but it is up to their own volition." We think that the jury may reasonably have inferred that the cesspool was not designed or constructed to bear a load upon it which might reasonably have been anticipated; that there was negligence involved in its design or construction.

All non-trespassing visitors upon the lands of another, for the purpose of determining the relative duties of the occupant towards them, are classified either as " Gratuitous Licensees " or " Business Visitors." (Restatement of the Law of Torts, American Law Institute, §§ 201, 202.) The business visitor is one who comes upon the land, at the instance of the occupant, for purposes " directly or indirectly connected with any purpose, business or otherwise, for which the possessor uses the land." (Id. § 202.) Haefeli and McDonald, invited by the Woodrich Engineering Co., Inc., the possessor of the cesspool, to enter and clean it for a price, were clearly there upon the business of the occupant, and were, therefore, business visitors. A business visitor " is entitled to expect that the occupier shall on his part use reasonable care to prevent damage from unusual danger which he knows or ought to know." (*Indermaur* v. *Dames*, 14 Law Times Rep. 484.) " The owners in such a case are bound to see that the premises are reasonably safe, and if they are not safe, and the owners could know of the dangerous condition and negligently did not know of it, they are liable for damages caused." (*Sutcliffe* v. *Clients Investment Co.*, [1924] 2 K. B. 746.) An occupant of land owes to the servants of an independent contractor, employed to do work thereon, the duty of exercising ordinary care to render the premises reasonably safe for the performance of the work. (*Sommer* v. *Public Service Corp.*, 79 N. J. L. 349; *Richards* v. *Consolidated Lighting Co.*, 90 Vt. 552; *Spry Lumber Co.* v. *Duggan*, 182 Ill. 218; *Crimmins*

v. *Booth*, 202 Mass. 17; *Pauckner* v. *Wakem*, 231 Ill. 276; *Hupfer* v. *National Distilling Co.*, 114 Wis. 279; *Galvin* v. *Mayor, etc., of New York*, 112 N. Y. 223; *Quinn* v. *Staten Island R. T. Ry. Co.*, 224 N. Y. 493.) If such a duty is owed to the employees of an independent contractor, all the more is it owing to the contractor himself, for the latter has contractual relations directly with the occupant while the former have none. The restatement sums up the matter by saying that an occupant is liable for bodily harm caused to business visitors if " he knows, or by the exercise of reasonable care could discover " the dangerous condition of his premises, and fails " to make the condition reasonably safe, or to warn them of the condition and the risk involved therein." (§ 213.)

The cesspool was constructed by a man named Lebette for a lump sum price. The Woodrich Engineering Co., Inc., was to furnish all the material, and did in fact supply the round or oblong stone, and all the cement which was used. Walter H. Dein, a brother of the company president, Philip H. Dein, was in charge, for the company, of all cesspool construction work; he was the " superintendent " of the work; he " supervised " the construction of the cesspool. Walter Dein testified that no written plans were made for the cesspool; that the " job was to be done in such a manner as was agreed upon " between himself and Lebette. Philip Dein testified concerning his brother that " he watched the construction and saw that it was built up according to the way cesspool construction is done." It cannot be denied that Walter H. Dein, the *alter ego* of the Woodrich Engineering Co., knew and approved of the plan of construction; knew and approved of the use of round stone; parceled out the cement and knew the amount of concrete mixture employed and the quantities used. Assuming, as we must, that the structure was improperly built to withstand a load reasonably to have been antici-

pated, Walter Dein, and, therefore, the defendant company, ought to have known that the cesspool was in a dangerous condition. Therefore, within the principles which have been stated, the defendant Woodrich Company, in inviting Haefeli and McDonald to work upon the cesspool, without giving warning of its dangers or remedying its defects, was guilty of negligence.

It has been held that the owner of a building in the course of construction, who has intrusted the planning of the building to a competent architect, and its erection to a competent contractor, is not liable for harm done to persons lawfully in the building, through its collapse because of faulty design or faulty construction. (*Burke* v. *Ireland,* 166 N. Y. 305; *Herman* v. *City of Buffalo,* 214 N. Y. 316.) These cases were decided upon the assumption that the owner took no part in supervising the construction; that he had no knowledge that the structure was inherently dangerous. Where these facts appear, the rule is otherwise. (*Hooey* v. *Airport Construction Co.,* 253 N. Y. 486; *Caspersen* v. *La Sala Bros.,* 253 N. Y. 491.) True, an owner, who contracts for the erection of a building, may not be liable, on the principle of *respondeat superior,* for the acts or omissions of the contractor or his servants, or for those of the architect. He is liable, however, as we have seen, where, after the construction work is completed, having full knowledge that the structure is dangerous, or reasonable grounds to believe that it is defective, he invites others to perform work within the structure, and neither warns them of the danger involved, nor takes reasonable steps to avert the peril.

We find, therefore, that the trial court was not in error in refusing to dismiss the action as against the defendant Woodrich Engineering Co., Inc. We find no error in the reception or rejection of evidence. The defendants complain that the court charged the jury as follows: " As I say, Haefeli had a right to assume that

everything was O. K. in that cesspool when he started down." We think the charge is correct. A business visitor " is entitled to expect that the possessor will take reasonable care to discover the actual condition of the property and either make it safe or warn him of its dangerous condition." (Restatement of the Law of Torts, § 213.) They complain of the charge: " I do not feel, gentlemen, under the evidence here, that it is a question of an independent contractor." Even if we assume that Lebette, who constructed the cesspool, was an independent contractor, which is doubtful, nevertheless, for the reasons given, we do not think that the possessor was thereby relieved from liability. The charge does not otherwise appear to be erroneous. We think, therefore, that as against the defendant Woodrich Engineering Co., Inc., the judgment of the trial court should be reinstated.

It has been said: " But the agent or servant is himself liable as well as the master, where the act producing the injury, although committed in the master's business, is a direct trespass by the servant upon the person or property of another, or where he directs the tortious act." (*Murray* v. *Usher*, 117 N. Y. 542, 547.) There is no proof in the case that Philip H. Dein, the codefendant of the Woodrich Engineering Co., Inc., designed the cesspool in question; determined its method of construction; gave orders as to the quantity or nature of the concrete mixture to be used; directed the commission of any tortious act; knew or had reason to know of any defect in plan or in construction. All these matters were committed to the judgment and supervision of Walter H. Dein, who was the superintendent in charge. We do not think, therefore, that a recovery against Philip H. Dein was permissible.

The order of the Appellate Division, as to the defendant Woodrich Engineering Co., Inc., should be reversed, and the judgment of the Trial Term affirmed, with costs

in the Appellate Division and in this court; the order of the Appellate Division, as to the defendant Philip H. Dein, should be affirmed and judgment absolute be ordered against the appellant upon the stipulation, with costs in all courts.

CRANE, J. (dissenting). The Appellate Division reversed upon the law, and granted a new trial. If there be an error of law in the case we are bound to affirm the Appellate Division.

The plaintiff's intestate was cleaning a cesspool in Hollis, Queens. The cesspool fell in and smothered him. There were two ordinances read into evidence. Section 47 of the Plumbing Rules, Exhibit I, reads:

" 47. Cesspools must not be used as privy vaults nor can privy vaults be used as cesspools. Cesspools and privy vaults must be located at least 15 feet from any building and on the same lot as building for which their use is intended. Wall of cesspools and privy vaults when constructed of brick must be 8 inches thick; of stone, 18 inches thick. Bottoms of cesspools and privy vaults must be of stone concrete 6 inches thick. The entire interior surface of cesspools and privy vaults must be finished with a coating of Portland cement mortar 1 inch thick."

The Sanitary Code, section 287, marked as Exhibit " A " in the case, reads:

" Sec. 287. Privy vaults and cesspools; construction. No privy vault or cesspool shall be allowed to remain on any premises, or built in the City of New York unless when unavoidable. The sides and bottom of every privy vault, cesspool, or ' school sink,' in the City of New York, must be impermeable and secure against any saturation of the walls or the ground above the same, unless otherwise allowed by a permit in writing issued therefor by the Board of Health and must then be used in accordance with the terms of said permit and the regulations of said Board. No water-closet or privy

vault shall be constructed without adequate provision for the effectual and proper ventilation and cleaning thereof."

We have here two provisions, one providing for a septic tank, and the other for a leaching cesspool. The septic tank is cemented all around on the inside, but is not necessarily built of stones cemented together. The leaching cesspool is built of loose stones so as to allow the water or fluid to permeate through.

In Queens county there are ten thousand leaching cesspools according to Hayward, inspector of the department of health.

The defendants received a permit from the health department in accordance with the ordinance to construct nine leaching cesspools, of which the cesspool in question was one. After it was constructed it was examined by the health department officials and a certificate issued allowing its maintenance. These facts are not disputed. The defendant employed a foundation and cesspool builder, an Italian, Samuel Lebette, paying him by the job, or $100 for constructing the cesspools, the material being furnished, or on the ground.

I will admit for the rule of this case only that the owner is liable for its negligence in either the construction of the sewer or in its maintenance thereafter in a dangerous condition. The violation of an ordinance in its construction would be some evidence of negligence. The jury in this case were left under the charge of the court with the impression that the plumbing ordinance applied, and that the defendants would be liable for not building a septic tank. What the court actually charged was that the jury could determine the law, and whether the defendants had violated it. If so, they would be guilty of negligence. No exception, however, was taken to this part of the charge. The court also charged the jury that Lebette was not an independent contractor, and that the owner was liable for his negligent construction.

Later he left it to the jury to say whether or not Lebette was a contractor, without stating the consequences flowing therefrom. There is evidence from which the jury could find that Lebette carelessly built the cesspool, and there was also evidence from which they could have found that the deceased did not do the work properly or exercise the care necessary in working in such places.

Although the cesspool caved in, there was no absolute liability upon the owner; its negligence had to be proved by the plaintiff, and was not *res ipsa loquitur*. Under these circumstances the defendant was entitled to the benefit of the ordinance permitting the leaching cesspool, and should not have been held to the presumption of negligence for failure to have a septic tank. Requests or exceptions might have brought this matter clearly to the attention of the jury or the court, but the fact is that the matter was left in doubt, or the jury told to select the law for themselves. We cannot review this part of the charge or these rulings, to which no exceptions were taken, but we may consider other rulings, the materiality of which will be augmented by these parts to which reference has been made. The court said in its charge: " We have had much, gentlemen, in the way of presentation here, and exhibits in the case, of the regulations of the Health Board, of the Building Department, and all of that. Has there been anything here done in the construction of this cesspool which in your opinion convinces you that these defendants, or either of them, were guilty of a breaking of the laws? If there has been a wilful omission on their part to follow the law, if they have broken an ordinance, in any of these departments, and you consider that the element contained in those ordinances that have been brought to your attention, if that had any causal connection with this accident, that would be of interest to you. For instance, I recall the section that had to do with the fifteen foot distance from the house, in regard to the installation of the cesspool, and

that it must be upon the lot where you find the edifice, the premises in question. We know in this case that the access to the cesspool was on the sidewalk. That naturally, therefore, could not be upon the lot, but did that have any real connection with the collapse? That would be one of the questions, gentlemen, that I call to your attention to consider, because an omission to follow the law strictly would be something for you to consider, if you feel that that in any way contributed, that failure to follow the strict provisions of the law or the ordinance, that would be for you to consider as a part of the case; and to dismiss and not consider it if you did not think it was an integral part and controlling and causal part of this situation."

To this part of the charge the defendants took an exception, and to all the judge said regarding the fifteen-foot provision and the sidewalk (fol. 605).

To my mind this was reversible error and justified the action of the Appellate Division in sending the case back for a new trial. The fifteen-foot provision contained in the plumbers' ordinance reads as follows: " Cesspools and privy vaults must be located at least 15 feet from any building and on the same lot as building for which their use is intended." This had nothing whatever to do with the case. The negligence claimed was in the defective construction of the cesspool; its location had nothing whatever to do with its construction. The plaintiff based no cause of action upon location, yet the judge left it to the jury to determine whether this ordinance had been violated in this particular; left it for them to say whether the violation bore upon the case. The judge should have told them that the location had nothing to do with the case; that they could not consider in any way the construction within fifteen feet and under the sidewalk as proof of negligence. The defendant is charged with negligent construction and may have been held liable for location of a proper cesspool in the wrong place. How

can we tell what the jury thought? We have no more right to speculate about the operation of their minds than they have to guess at the law. When the law is correctly stated we assume the jury understood and followed it; when it has been materially misstated, we we must make the same assumption. This court at least is presumed to be consistent. In these circumstances we should be slow to reverse the Appellate Division when it requires the reinstatement of a $35,000 judgment for negligence.

For these reasons the Appellate Division ruling was proper, and the judgment reversing on the law and granting a new trial should be affirmed and judgment absolute on the stipulation granted.

CARDOZO, Ch. J., POUND, O'BRIEN and HUBBS, JJ., concur with KELLOGG, J.; CRANE, J., dissents in opinion; LEHMAN, J., not sitting.

Ordered accordingly.