JERRY SCANZILLO, Respondent, *v.* BEATRICE HIRSHON and ADOLPH B. LICHENSTEIN, as Executors and Trustees of the Estate of CHARLES HIRSHON, Deceased, Appellants.

First Department, May 19, 1939.

*B. G. Barton* of counsel [*Caverly, Dimond, Barton & O'Gorman,* attorneys], for the appellants.

*Charles H. Kelman* of counsel [*Charles H. Kelman,* attorney], for the respondent.

CALLAHAN, J. On February 20, 1935, plaintiff, the driver of a coal truck, was delivering coal to premises 67 Irving place, New York city, N. Y., owned and controlled by defendants. Plaintiff parked his truck in front of premises and proceeded to run the coal into the cellar through a coal hole in the sidewalk. Due

to some obstruction, the coal stopped running. In order to correct this, plaintiff sought admission to the cellar through the hallway — the way that he had previously entered it. An elevator operator, who apparently was in charge of the building in the absence of the superintendent, showed plaintiff an outside chute and told him to use that chute to get down into the cellar. At the entrance to the chute were two cellar doors made of steel, which at the time were more than half-way open in an upright position, slanting slightly towards the sidewalk. The end of the doors nearest to the building had chains fastened thereon which ran into the cellar. The purpose of the chains was to keep the doors from falling outward onto the sidewalk. There was no bar or other contrivance that would prevent the doors from closing inward.

The chute consisted of strips of iron several inches apart, fastened on rods running across the same. It was quite apparent that the chute was meant as a slide for lowering freight, not as a means for persons to enter the cellar. Nevertheless, plaintiff sat down on the sidewalk, put his feet over the chute, turned around and attempted to slide into the cellar. As he did so, one of the steel doors descended on his right hand, injuring it. There is no evidence as to what caused the door to fall. Plaintiff says that he did not touch the door.

From a judgment entered on a verdict in favor of the plaintiff the defendants appeal.

Among the points discussed in the briefs are whether plaintiff was an invitee or a licensee in using the freight chute to enter the cellar; whether the elevator operator acted within the scope of his employment in directing plaintiff to use the chute, and whether plaintiff was guilty of contributory negligence as a matter of law.

We will assume, for the purpose of this appeal, that these questions were for the jury. However, we fail to find any evidence of defendants' negligence, and for that reason must reverse the judgment and dismiss the complaint.

It is clear that the accident to plaintiff did not occur because of any hidden danger, nor from any defect in the construction or lack of repair of the premises. It occurred because one of the cellar doors fell inward as plaintiff was descending the chute. That doors standing in an upright position might fall inward, when no bar or other contrivance was present to prevent them from so falling, must have been as obvious to plaintiff as to defendants' employee. There was no lack of reasonable care on defendants' part in failing to warn plaintiff of that obvious danger. If, as plaintiff suggests, the door might have been blown down by the wind, this must have been due to the position of the doors, which plaintiff should have observed.

The ordinances (sections 148 and 164 of chapter 23 of the Code of Ordinances of the City of New York), relied on by respondent, do not apply to the present case. Section 148 relates to hoistways, and provides that trapdoors, guarded by railings or rods to prevent accidents to passersby, shall be provided when such hoistway is not actually in use. The present opening was not a hoistway, and it was in use at the time of the accident. Section 164 requires that cellar entrances, where covered by a cellar door, shall not be permitted to remain open, except when in actual use for the ingress or egress of persons or for the loading or unloading of things out of or into the cellar. In the present case the chute was in actual use for the ingress of plaintiff and, of course, the cellar door was required to be open when being so used. It is plain, therefore, that there was no violation of any statutory duty on the part of defendants, and the trial court was correct in so ruling.

Nor do we find any evidence of negligence under common-law rules. It was improper, therefore, to submit the issue of negligence to the jury. The motion to dismiss the complaint should have been granted.

The judgment should be reversed, with costs, and the complaint dismissed, with costs.

MARTIN, P. J., UNTERMYER and DORE, JJ., concur; COHN, J., dissents.

COHN, J. (dissenting). I dissent. The jury was justified in finding negligence on the part of defendants. Plaintiff obeyed the direction of the person admittedly in charge of defendants' building and endeavored to enter the cellar coal bin through the chute indicated by defendants' agent. This chute was unguarded, without any warning sign and without any iron bar or other protection that would prevent the cellar doors from falling on plaintiff. In the circumstances, plaintiff was in the position of a business visitor to whom defendants owed a duty to maintain the premises in a reasonably safe condition or at least to give warning of the dangerous condition of the chute and the iron doors. "An occupant of land owes to the servants of an independent contractor, employed to do work thereon, the duty of exercising ordinary care to render the premises reasonably safe for the performance of the work." (*Haefeli* v. *Woodrich Engineering Co.*, 255 N. Y. 442, 448. See, also, *Miller* v. *M. & D. Holding Corporation*, 277 id. 647; *Adams* v. *Misena Realty Co., Inc.*, 239 App. Div. 633.) The judgment for plaintiff should be affirmed.

Judgment reversed, with costs, and the complaint dismissed, with costs.