CHARLES SHANKMAN, Appellant, *v.* CITY OF NEW YORK, Respondent.

Judgment affirmed, with costs. No opinion. Present — Townley, Untermyer, Dore, Cohn and Callahan, JJ.; Callahan, J. dissents in opinion in which Untermyer, J., concurs.

CALLAHAN, J. (dissenting). Plaintiff seeks to hold defendant, the City of New York, liable in negligence for injuries which he received on July 24, 1939, when he fell over a pipe protruding from the floor of a room in the basement

of a public bathhouse. In falling, plaintiff struck his knee against the door saddle of a room located therein. Plaintiff claims that as the result of injuries thus received, plaintiff's leg was required to be amputated.

The complaint having been dismissed at the close of his case, plaintiff is entitled to the benefit of the most favorable inference to be drawn from the testimony.

The bathhouse was owned by the City. It was being substantially altered by the Works Progress Administration (hereinafter called W. P. A.), a Federal agency by which plaintiff was employed. The work had been commenced in August, 1938, as a project to relieve unemployment. The project was sponsored by the City, but the cost thereof was paid almost wholly out of federal funds. There is a dispute between the parties as to who was in control of the bathhouse at the time of the accident. Plans for extensive alterations had been drawn by the architects of W. P. A., which agency also procured necessary building permits. W. P. A. foremen were in charge of the work and all the workmen engaged were W. P. A. employees, except that at times City employees fired the heating boilers. City officials visited the premises frequently to examine the progress of the work and always had access thereto except that W. P. A. foremen had keys to the building and to some of the rooms therein. During all the period involved the City remained the owner of the building. There was no demise or other change of ownership or legal possession. Thus there is no question involved as to liability between vendor and vendee or lessor and lessee. Without reciting in detail the contentions of the parties as to the legal effect of the arrangement with respect to control during the period of alterations, I will assume, *arguendo*, that the City is correct in its contention that the status of W. P. A., in law, was equivalent to that of a general contractor. I shall hereafter refer to W. P. A. as the " contractor ".

There was evidence from which the jury might have found that the protruding pipe was a condition which existed long before the contractor started to work in the building. There was also evidence that the room in which the pipe was found on the day of the accident had been partitioned off by the contractor and the door saddle located and constructed by it. Lighting conditions had been altered by the contractor. On the day of the accident there was paper scattered on the floor which partly concealed the pipe. Despite all these changes in conditions occurring subsequent to the time W. P. A. took over, the evidence would warrant a finding that the protruding pipe as it existed when the contractor commenced its work was in and of itself a dangerous condition and a nuisance affirmatively created by the City. The plans for the alteration apparently did not call for any change of the floor at the location of the offending pipe. The inference was, therefore, warranted that the City authorized the continuance of the dangerous condition. Its existence was known to the City or at least such knowledge might be inferred by the jury. The presence of the pipe might well have been found to be the proximate cause of the accident. Under the circumstances, I deem that a duty existed on the part of the City, as owner, to guard the dangerous condition or to warn the employees of the contractor thereof. (*Haefcli* v. *Woodrich Engineering Co.*, 255 N. Y. 442; 2 Shearman & Redfield on Negligence [Rev. ed.] § 279.)

Breach by the City of the duty suggested would be a tort separate and apart from any breach of duty on the part of the contractor in failing to afford plaintiff a safe place to work. While the latter breach would be an act of omission in the performance of the work, the City's breach would be

a negligence independent of such performance. Accordingly, the exemption from liability ordinarily granted to one who engages a competent contractor would be no defense to plaintiff's claim against the City.

The issue as to whether the accident was the proximate result of the dangerous condition created by the protruding pipe for which the defendant, *prima facie,* would be liable, should have been submitted to the jury. It was error to dismiss the complaint.

The judgment should be reversed and a new trial ordered.