271 F.2d 651
 Kenneth GRANT, Plaintiff-Appellee-Appellant,
v.
UNITED STATES of America, Defendant-Appellant-Appellee (George F. McGuire and Royal Indemnity Company, Third-Party Defendants-Appellees).
 No. 197.
 Docket 25316.
 United States Court of Appeals Second Circuit.
 Argued March 4, 1959.
 Decided October 22, 1959.
 
 COPYRIGHT MATERIAL OMITTED Morton Hollander, Atty., Dept. of Justice, Washington, D. C. (George Cochran Doub, Asst. Atty. Gen.,; Cornelius W. Wickersham, Jr., U. S. Atty., and Robert A. Morse, Asst. U. S. Atty., Eastern District of New York, Brooklyn, N. Y., Bernard Cedarbaum, Atty., Dept. of Justice, Washington, D. C., on the brief), for the United States, appellant.
 Bernard Meyerson, Brooklyn, N. Y. (William H. George, Valley Stream, N. Y., on the brief), for Kenneth Grant, appellee-appellant.
 Louis W. Mele, New York, N. Y. (Cohen, McGuirk & Michels, Brooklyn, N. Y., and Alexander Gangel, New York City, on the brief), for Royal Indemnity Company, appellee.
 Before MEDINA and HINCKS, Circuit Judges, and MATHES, District Judge.*
 HINCKS, Circuit Judge.
 
 
 1
 The plaintiff sued to recover for personal injuries, under the Federal Tort Claims Act, 28 U.S.C.A. § 1346(b), sufferred in a building owned and maintained by the United States for the use of the United States Merchant Marine Academy. The defendant brought in, by third-party complaint, Lieutenant McGuire, the Ship's Service Officer of the Academy who was the officer in charge of the Ship's Service Store, which occupied part of said building, and an insurance carrier, Royal Indemnity Company (Royal), which had written liability insurance on the premises. After a trial without a jury, the district court judge gave judgment for the plaintiff against the defendant, and for the third-party defendants on the third-party complaint. From the judgments in favor of plaintiff and in favor of Royal, the United States appeals. The plaintiff also appeals on the ground that his award was inadequate. No appeal was taken from the judgment dismissing the third-party complaint against Lieutenant McGuire.
 
 
 2
 The plaintiff, who was employed by a news company, on the morning of January 5, 1952 was delivering newspapers to the Ship's Service Store of the Merchant Marine Academy at Kings Point, New York. Daily deliveries were made to an entrance of the store below ground level to which in common with other space occupied by the Academy, a twelve-step exterior uncovered stairway led. Alongside the stairway was a chute down which Grant ordinarily slid the bundles of newspapers but on the morning when the accident occurred it was raining and the surface of the chute was wet so that the bundles would not slide. Grant therefore carried two bundles of papers, one on his shoulder and the other in his hand, down the stairway which ordinarily was lighted by overhead lights. On this morning, the trial judge found, the lights were not turned on. When Grant had descended about nine steps, he mistakenly assumed he had reached the bottom; he stepped forward instead of down, fell and injured his right knee.
 
 
 3
 The Store was operated by Lieutenant McGuire, an officer of the United States Merchant Marine, under his duty assignment as Ship's Service Officer. It was located in a Government building the rest of which was used by the Academy. Its profits, after payment of salaries to employees, went into the Academy welfare fund. The trial judge found, and it is not questioned on this appeal, that the Store was an integral part of the Academy which was an instrumentality of the United States. Act of Aug. 4, 1939, § 5, 46 U.S.C.A. (ed. 1940) § 1126. See also Act of May 11, 1944, 58 Stat. 220, and 46 U.S.C.A. (ed. 1952) § 1126 et seq.
 
 
 4
 The insurance policy under which the United States claims coverage was issued on June 30, 1945 and was to run until cancelled by either party. It named as the insured the "Ship's Service Officer, United States Merchant Marine Academy." It had never been cancelled. The premium was to depend on the gross sales of the Store which were to be reported every quarter. Relevant provisions of the policy are set out in the margin.[1]
 
 
 5
 After the trial, Judge Byers filed an opinion containing findings of fact and conclusions of law. 162 F.Supp. 689. He entered judgment for the plaintiff for $4,728.49 on his complaint against the United States and dismissed the third-party complaint against McGuire and the Royal Indemnity Company.
 
 
 6
 As to the plaintiff's appeal, the trial court's award of damages is based on findings of fact which can be disturbed only if clearly erroneous. Sanders v. Leech, 5 Cir., 158 F.2d 486. Cf. Kelcey v. Tankers Co., 2 Cir., 217 F.2d 541; Lukmanis v. United States, 2 Cir., 208 F.2d 260. Plainly, the findings below cannot be so characterized. Indeed, they are fully consonant with substantial evidence and in turn furnished a basis upon which the award was reasonably made.
 
 
 7
 The holding below which imposed liability upon the United States must also be upheld. The law of the state of New York governs here. Ira S. Bushey & Sons, Inc. v. United States, 2 Cir., 172 F.2d 447. It is clear that under such law the defendant owed business invitees, such as the plaintiff, "the duty of exercising ordinary care to render the premises reasonably safe for the performance of the work." Haefeli v. Woodrich Engineering Co., 255 N.Y. 442, 175 N.E. 123, 125; Meiers v. Fred Koch Brewery, 229 N.Y. 10, 127 N.E. 491, 13 A.L.R. 633. Here, as well as in the Meiers case just cited, the defendant not only should have anticipated the use of the premises in the evening and early morning hours, but its past behavior evidences a recognition, in the interest of safety, of the need for lighting. There clearly was a risk created by these unlit stairs in the dark early morning hours of January. Under these circumstances the question of whether the defendant had used ordinary care in rendering the premises reasonably safe was one of fact for the trier. Meiers v. Fred Koch Brewery, supra; Green v. Church of Immaculate Conception, 248 App.Div. 757, 288 N.Y.S. 769. There is nothing contrary to the ruling in Kimbar v. Estis, 1 N.Y.2d 339, 153 N.Y.S.2d 197, 135 N.E.2d 708, 710. The Court there merely held that under the circumstances proved an owner of a rustic summer children's camp was under no duty to floodlight a beaten path because the presence of ordinary pine trees several feet from the path didn't create "any peculiar hazard, defect, or danger." It was recognized that absent such perils neither statute nor common law creates an invariable duty even with respect to invitees to light common ways. We do not think that the Court intended to narrow the general duty of care owed to invitees expounded in the Haefeli and Meiers cases nor can we say that a "peculiar hazard, defect or danger" was not created here by the unlit stairs. On all the evidence the ultimate finding of negligence was not unreasonable and may not be disturbed.
 
 
 8
 Nor can we say that the judge below clearly erred in finding the plaintiff free from contributory negligence. McConville v. United States, 2 Cir., 197 F.2d 680, certiorari denied 344 U.S. 877, 73 S.Ct. 172, 97 L.Ed. 679. This is so even if, as the United States asserts, the burden of proof[2] as to this issue under New York law was on the plaintiff. Mastin v. City of New York, 201 N.Y. 81, 94 N.E. 611, 33 L.R.A.,N.S., 784; Ira S. Bushey & Sons, Inc. v. United States, supra. There was evidence which the judge found credible, that frequently on prior occasions the stairway had been left unlighted: yet the plaintiff had completed deliveries without untoward incident. Especially in view of his familiarity with the premises, we cannot say as a matter of law that the plaintiff was negligent in proceeding with the delivery in the usual way merely because once again no light was provided. Nolan v. Eros Foods, Inc., 275 App.Div. 911, 89 N.Y.S.2d 655. He testified that he maintained body contact with the chute as he descended the stairway. It cannot be said categorically that it was negligent to descend without hand contact. It may be observed that "[o]ne placed in the dilemma of abandoning the reasonable course of his work or assuming a risk will not be charged with contributory negligence as a matter of law if he adopts the latter alternative." Kaplan v. 48th Avenue Corp., 267 App.Div. 272, 45 N.Y. S.2d 510, 512.
 
 
 9
 On the issue posed by the third-party complaint of the United States against McGuire and Royal the court below correctly held that under the doctrine of United States v. Gilman, 347 U.S. 507, 74 S.Ct. 695, 98 L.Ed. 898, the United States had no right of recovery over against McGuire. We must hold, however, that the court erred in thinking that the Gilman decision precluded its recovery against Royal. For by its third-party complaint against Royal the United States was not seeking indemnity from its employee, the Ship's Service Officer, McGuire, or from Royal, as the Ship's Service Officer's indemnitor under its insurance policy. Instead, it sought to hold Royal, the insurer, on its policy on the theory that it, the United States, was an additional insured under the policy and so had a direct contract right against Royal to enforce the indemnity provided by the policy. The crucial question, therefore, was one of interpretation: Under the policy was the United States an insured?
 
 
 10
 To solve this problem of interpretation we turn, of course, to the policy. The first clue therein is in the express "Definition of `Insured.'"[3] This refers to the coverage of the policy "with respect to the business operation of the named insured." And the Declarations specify as the named insured the Academy itself, as well as the Ship's Service Officer, and speak of "insured premises" on which "the business conducted" is the "operation of the Academy." Add to this the fact that the policy provided that the premium should be recomputed every quarter in accordance with the gross sales of the store located in what the policy called the "insured premises," and it becomes reasonably plain that the policy was intended to cover liability for all bodily injuries caused by the operation of the business and not merely the liability attaching to any particular individuals.
 
 
 11
 This conclusion is further fortified by the fact that in the "Definition of `Insured'" members of the insured group are identified not by name but as incumbents of various offices. This shows it to have been clearly contemplated that during the life of the policy, which was to continue until cancelled, its protection was to attach to a succession of incumbents. The particular offices mentioned are ones which might be thought to carry superior supervisory responsibility for the operation of the store. And to these is added as an additional insured any "other superior administrative authority." In short, the language of the policy discloses a studied effort to include as additional insureds all those to whom the doctrine of respondeat superior could possibly apply. This, of course, would include the United States which owned and operated the Academy.
 
 
 12
 The foregoing provisions make it reasonably clear, we think, that the policy covered the business operations of the Store, and was to afford protection to all who in the future, during the life of the policy, should come to have legal responsibility for its business operations. Just as its protection was to attach to a newly appointed Ship's Service Officer or Academy Superintendent who never theretofore had been liable, so, we think, its protection was to attach, upon the enactment of the Federal Tort Claims Act, 28 U.S.C.A. § 2671 et seq., to the United States which theretofore could not have been held liable. The mere fact that in 1945 when the policy issued the United States could not be sued, does not import an intent that the United States should be excluded as an insured. For irrespective of its immunity from suit the United States may have deemed it in the public interest to make provision for the compensation of those injured on its premises. And that the parties recognized this interest and intended to give it effect is borne out by the Condition of the policy relating to immunity as a defense.[4] Although under the holding of Standard Oil Co. v. Johnson, 316 U.S. 481, 485, 62 S.Ct. 1168, 86 L.Ed. 1611, the Store was a government instrumentality and as such entitled to immunity from suit, nevertheless by Condition 18 the parties stipulated that as against a tort claimant the insurer was not to raise the defense of immunity as of right.
 
 
 13
 Thus the enactment of the Tort Claims Act, which terminated governmental immunity by legislation, added nothing to the risk covered by the policy under which by express contractual provision the insurer agreed to forego governmental immunity as a defense to a third-party claim. Consequently, from the immunity of the United States existing when the policy issued it may not be inferred that the United States was to be excluded as an insured under the policy. It was as much an insured as was its instrumentality the Academy, or the Ship's Store. Alred v. United States, Civil No. 61-257, D.C.S.D.Cal., Sept. 30, 1958; Irvin v. United States, D.C., 148 F.Supp. 25; Rowley v. United States, D.C., 140 F.Supp. 295.
 
 
 14
 For the foregoing reasons, the judgment for the plaintiff is affirmed; the judgment in favor of the third-party defendant Royal Indemnity Company is reversed.
 
 
 
 Notes:
 
 
 *
 United States District Judge for the Southern District of California, sitting by designation
 
 
 [1]
 
 "Insuring Agreements
 "Division I Liability
 "To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon the insured by law, or assumed by the insured under contract, including warranties of goods and products, for damages
 "Coverage A — Bodily Injury Liability Because of bodily injury, sickness or disease, including damages for care and loss of services and including death at any time resulting from said bodily injury, sickness or disease, sustained by any person or persons and caused by accident.
 * * * * * * *
 "Definition of `Insured'
 The unqualified word `insured' wherever used in this division, and in other parts of this policy when applicable to this division, includes not only the named insured but also (1) under Coverages A and C with respect to the business operations of the named insured, any executive officer of the named insured including the commanding officer or commandant of the activity concerned, the commandant of the naval district or river command, the chief of naval air functional training or other superior administrative authority and the ship's service officer and assistant ship's service officer, while acting within the scope of his duties as such, and (2) under Coverages A and B, any person while using an automobile owned or hired by the named insured and any person or organization legally responsible for such use, and any executive officer of the named insured with respect to the use of a non-owned automobile in the business of the named insured. * * *
 * * * * * * *
 "Conditions
 "18. Immunity as Defense
 The company agrees that the fact that the insured is a government instrumentality will not be interposed as a defense in any lawsuit in which the company's liability under the policy is in any way concerned, unless so requested in writing by the insured.
 In no case will such defense be requested of the company by the insured unless and until it has been specifically authorized to do so by the insured.
 "Declarations
 "Item 1. Name of insured: Ship's Service Officer, United States Merchant Marine Academy.
 * * * * * * *
 "Item 3. The business conducted in the insured premises is: Operation of Merchant Marine Academy.
 "Item 4. The principal location of the insured premises is: Kings Point, Long Island, New York."
 
 
 [2]
 The opinion below does not indicate whether as to this issue the burden of proof was on the plaintiff or the defendant
 
 
 [3]
 See note 1, supra
 
 
 [4]
 Condition 18. See note 1, supra