**Frank PAYNE, Martha Payne, Plaintiffs–Appellants,**

**v.**

**UNITED STATES of America, Defendant–Appellee.**

**Docket No. 03–6066.**

United States Court of Appeals, Second Circuit.

Argued: Nov. 25, 2003.

Decided: Feb. 19, 2004.

---

John Richard Streb, Kenmore, NY, for Plaintiffs–Appellants.

Mary K. Roach, Assistant United States Attorney, for Michael A. Battle, United States Attorney for the Western District of New York, Buffalo, NY, for Defendant–Appellee.

Before: CALABRESI, B.D. PARKER, and RAGGI, Circuit Judges.

CALABRESI, Circuit Judge.

Plaintiffs–Appellants Frank and Martha Payne brought this action in 1997 under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*, to recover for injuries sustained by Mr. Payne when he fell into a "pref hole" at the United States Postal Service ("USPS") Buffalo Processing and Distribution Center on William Street ("William Street Facility") in Buffalo, New York. After a six-day bench trial, the United States District Court for the Western District of New York (Arcara, *J.*), finding that the United States had not been negligent in maintaining its property, issued a judgment in favor of the defendant-appellee. On appeal, the Paynes contend that the district court made clearly erroneous findings of fact, wrongly failed to conclude that the defendant had been negligent, and misapplied the law of New York. Because we deem each claim to be without merit, we AFFIRM.

## I. BACKGROUND

The following facts were presented at trial. At the time of the accident, Mr. Payne was an independent contractor who hauled mail for the USPS. On September 30, 1996, at approximately 6:55 p.m., Mr. Payne arrived at the William Street Facility, backed his truck up to the loading dock, and went inside. According to standard procedure, a driver such as Mr. Payne would then unload hampers and containers of mail from his truck. "Mail handlers" would empty the containers into one of two kinds of "dump holes": large "bulk holes," for bulk mail, and smaller "pref holes," for first class or priority mail. Pref holes— the kind of hole involved in the incident here at issue—are about three feet square and approximately nine feet deep. They

have metal covers that can be opened and closed quickly and that are flush to the ground when closed. When open, the covers stand upright to expose the hole.

According to Mr. Payne, after entering the William Street Facility on the evening in question, he stepped over a closed pref hole on his way to speak to another driver, Mr. Kolb. Payne testified that the two men had a short conversation, and that he then took a few steps backwards and fell straight into the pref hole, sustaining injuries to his ribs and leg. Kolb testified to essentially the same facts. A mail handler, Mr. Trzaska, testified, however, that he had personally opened the pref hole at 6:00 p.m., as he usually did, and had left it open until the accident, because it was in constant use during that time. According to Trzaska, Payne walked over the open hole before talking to Kolb, and, after their conversation, turned around and walked straight into the hole.

The district judge believed Trzaska's version of events. He also determined that dump holes are necessary to the business of the USPS, and that the USPS had attempted to minimize their danger by (a) not allowing the public into the facility and (b) requiring that dump holes be covered when not in use. Judge Arcara also found that the pref hole was in constant use at the time of the accident, and, in the alternative, that it was about to be used in the unloading of Payne's truck. Leaving the cover open thus did not, in his view, render the area unduly hazardous, or violate USPS safety policy. He concluded, therefore, that the William Street Facility was reasonably safe under the circumstances.

He also determined that the pref hole was an "open and obvious condition" that was readily observable, and that Payne himself, having visited the facility almost daily for many years, was familiar with it. The court relied for this conclusion upon Payne's testimony that he was aware that dump holes were a potential hazard, and that he knew that someone had recently fallen into a dump hole. The district court then considered *Michalski v. Home Depot, Inc.*, 225 F.3d 113 (2d Cir.2000), which interpreted New York law in holding that the open and obvious nature of a dangerous condition does not relieve the landowner from its duty to use reasonable care, and that liability might still ensue so long as the harm is readily foreseeable by the landowner, and the landowner has reason to know that the visitor might either: (1) not expect the danger; or (2) be distracted from it. *Id.* at 121. Applying *Michalski,* the district court found that the USPS had no reason to believe that Payne might not expect the danger or be distracted from it. It further concluded, citing *Tagle v. Jakob,* 97 N.Y.2d 165, 170, 737 N.Y.S.2d 331, 763 N.E.2d 107 (2001), that the defendant had no duty to warn against an obvious danger. Judgment was thereupon entered in favor of the defendant.

## II. DISCUSSION

### A. The District Court's Findings of Fact

We review the district court's findings of fact for clear error, and will overturn them only if they are unsupported by the record. *See Ching Sheng Fishery Co. v. United States,* 124 F.3d 152, 157–58 (2d Cir.1997); Fed.R.Civ.P. 52(a). Although Mr. Payne disputes the facts surrounding the accident, we cannot say that any of the district court's factual findings, taken as a whole, were clearly erroneous. Judge Arcara chose to credit the testimony of some witnesses rather than that of others, and acted well within his discretion in doing so. *See Anderson v. Bessemer City,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). Furthermore, he explained that he believed Trzaska's testimony that the pref hole had initially been open because Kolb

and Payne, who had testified that it had been closed when Payne first stepped over it, also testified that they had not seen anyone come by and open it during their brief conversation. The judge found it implausible that the pref hole cover could have been opened in that short window of time without Kolb or Payne noticing it. In part on that basis, he concluded that the hole must have been open from the outset. Far from being clearly erroneous, this conclusion seems to be amply supported.

The appellants also claim that the district court clearly erred in finding that the pref hole was in "constant use." Since the district court found that the hole was about to be used to unload Mr. Payne's truck—a conclusion that the appellants do not challenge—whether the hole was in constant use or not makes no difference. In any case, the district court did not clearly err in its determination, based on the testimony given and in light of data offered about the normal rate of arrival of trucks, that the pref hole was, in fact, in constant use at the time in question.

Lastly, the appellants argue that the district court wrongly concluded that the USPS did not have cause to think that Payne would be distracted at the time of the accident. We agree with Payne up to a point. By all accounts, the loading area at the William Street Facility is always hectic and noisy. Further, although, as the district court found, drivers are expected to unload their trucks as quickly as possible and without conversation, no evidence was adduced of a strict silence rule. Thus, USPS, as the property owner, was obliged to consider the possibility of dis-

tracting conversation as well as workplace noise in calculating proper safety precautions. But this—as we discuss below—does not in itself mean that the defendant failed to exercise reasonable care.

## B. The District Court's Determination of No Negligence

■ The appellants also claim that the district court erred in concluding that the defendant was free from negligence on the facts as they were found. We recently reaffirmed with little discussion the long-held rule of this Circuit that a district court's finding with respect to the existence of negligence is reviewed *de novo*. *See Ching Sheng Fishery Co.*, 124 F.3d at 157. This standard has been heavily criticized. *See infra*. As the law of the Circuit, it is, however, binding upon us, unless it is rejected by the Supreme Court or by this Court after an in banc review.[1] *See Jones v. Coughlin*, 45 F.3d 677, 679 (2d Cir.1995) (per curiam). Because the outcome of the instant case does not turn on the matter—as we will discuss shortly, we would affirm on either a *de novo* or clear error standard of review—we do not deem the present case to be a suitable one in which to call for in banc reconsideration. But we do wish to take the opportunity to explain why we believe that, in an appropriate case, the rule of this Circuit should be reconsidered.

First, the other circuits and commentators unanimously disagree with us. As far as we can tell, all other circuits review a district court's determination as to the existence of negligence for clear error only.[2]

---

1. This review can occur in a full reconsideration in banc, or through the unanimous consent of the active judges of the court, following the circulation of an opinion raising the issue.

2. *See* 9A Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2590 (3d ed.1999); *see also Hitchcock v. United States*, 665 F.2d 354, 359 n. 3 (D.C.Cir.1981); *Harrison v. United States*, 284 F.3d 293, 297 (1st Cir.2002); *Davidson v. O'Lone*, 752 F.2d 817, 820–21 (3d Cir.1984); *Bonds v. Morten-*

And Wright and Miller reject our rule as contrary to "sound policy." *See* 9A Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2590 (3d ed.1999); *see also* Steven Alan Childress & Martha S. Davis, 1 *Federal Standards of Review* § 2.28 (noting that "the policies supporting deference today on established negligence questions are widely recognized, justified, and court-supported"). Moreover, such authorities contend that, in adhering to our position, we have misinterpreted prevailing Supreme Court precedent, as set out in the case of *McAllister v. United States*, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20 (1954).[3]

Even if our rule is reconcilable with governing Supreme Court precedent, however, it is arguably no longer consistent with prevailing tort law. The primary justification for the rule is found in *Mamiye Brothers v. Barber S.S. Lines, Inc.*, where Judge Henry Friendly emphasized "the need for consistency in judicial decision." 360 F.2d 774, 776 (2d Cir.1966). Friendly stated that *de novo* review is particularly important in the context of negligence determinations because only free review can ensure that the district court—which does not charge itself as it does a jury—applies the correct legal standards. *Id.* at 777. ("Save when the trial judge has gone to unusual lengths in his opinion, the only way in which an appellate court can determine whether he correctly apprehended these manifold specifications of the general standard [of negligence] is by reviewing his result, and if that review is to be effective, it must be unimpeded.") Significantly, however, Friendly noted that this concern was in turn based on the Holmesian view that saw a primary role for judges in the elaboration of precise and detailed standards for negligence. Accordingly, Friendly relied, in his reasoning, upon the fact that

---

sen & Lange, 717 F.2d 123, 125 (4th Cir. 1983); *Jackson v. OMI Corp.*, 245 F.3d 525, 528 (5th Cir.2001); *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1198 (6th Cir.1988); *Mucha v. King*, 792 F.2d 602, 605 (7th Cir. 1986); *Sterling Drug, Inc. v. Yarrow*, 408 F.2d 978, 993–95 (8th Cir.1969); *Catalina Cruises, Inc. v. Luna (In re Catalina Cruises)*, 137 F.3d 1422, 1425 (9th Cir.1998); *Colorado Flying Acad., Inc. v. United States*, 724 F.2d 871, 879 (10th Cir.1984); *American Dredging Co. v. Lambert*, 153 F.3d 1292, 1295 (11th Cir.1998).

3. In *McAllister*, a plaintiff who contracted polio aboard a U.S. War Shipping Administration vessel sued the United States, alleging that its representatives had negligently allowed residents of Shanghai (a city where polio was ostensibly prevalent) to mingle with the crew onboard the ship. The district court found for the plaintiff, and we reversed its determination of negligence, after presumably following Circuit precedent and applying a *de novo* standard of review. 207 F.2d 952, 954 (2d Cir.1953). The Supreme Court, after assuming that we were applying the predominant clearly erroneous standard, nevertheless overruled our judgment, noting (a) that "there

was substantial evidence from which the District Court could and did find that respondent was negligent," (b) that it was a "a reasonable inference" that the negligence was a cause in fact of the injury, and (c) that the Court could not "say on review that a judgment based upon such evidence is clearly erroneous." *McAllister*, 348 U.S. at 22–23, 75 S.Ct. 6.

When confronted with this authority, Judge Henry Friendly, writing for the panel in *Mamiye Bros. v. Barber S.S. Lines, Inc.*, read *McAllister* to apply the clear error rule only to the question of the existence of causation, rather than to that of negligence. 360 F.2d 774, 777–78 (2d Cir.1966). Although this reading of *McAllister* may well not be wrong, it has been roundly criticized. *See* Wright & Miller § 2590 ("The natural and normal reading of [*McAllister*] is that the Supreme Court held that a determination of negligence is reviewed under the 'clearly erroneous' rule."); Childress & Davis § 2.28 (arguing that our interpretation of *McAllister* is based upon "a hairsplitting distinction," and noting that "a fairer reading of the Court's opinion ... supports the majority rule among circuits").

[t]he law of negligence has ... followed the path anticipated in the celebrated passage of Holmes' lectures of 1881, fulfilling "the tendency to become more and more concrete by judicial decision and by statute" without interfering with "the general doctrine maintained as to the grounds of liability."

*Id.* at 776–77 (alteration omitted). But, instead, the law of torts has moved in precisely the opposite direction. And the question of the existence of negligence—of the "ought," so to speak—has become primarily one for the factfinder to determine on the basis of the specific and complex events of each individual case. Holmes' view has, in other words, today "been largely rejected," and specifically so by New York courts. *See Stagl v. Delta Airlines, Inc.,* 52 F.3d 463, 470 (2d Cir. 1995) (internal quotation marks omitted) (citing New York cases). As such, the issue today is only very rarely whether the trial court has applied the correct *legal* standard. For, under present law, such standards are, in New York as elsewhere, unlikely to be determinative. And the primary responsibility inevitably falls, instead, on the factfinder—whether it be court or jury—to assess what, in the circumstances, is appropriate conduct; what the "reasonable person" ought to have done.

Given this state of affairs and the law of the other circuits, it is not surprising that we have severely undercut our rule over the years since it was established. We have held, for example, that "the trial court's finding should ordinarily stand unless the court manifests an incorrect conception of the applicable law." *Esso Stan-*

*dard Oil S.A. v. S.S. Gasbras Sul,* 387 F.2d 573, 580 (2d Cir.1967) (internal quotation marks omitted); *see also Cleary v. United States Lines Co.,* 411 F.2d 1009, 1010 (2d Cir.1969) (per curiam) (same). We have suggested that the rule only applies to cases "where contrary decisions rest on exactly the same facts." *Dinnerstein v. United States,* 486 F.2d 34, 37 n. 2 (2d Cir.1973) (internal quotation marks omitted). And in a few cases, we have failed to apply the rule at all, upholding district courts' determinations of negligence after declaring that we could not find them "clearly erroneous." *See, e.g., Matthews v. CTI. Container Transport Int'l, Inc.,* 871 F.2d 270, 280 (2d Cir.1989). *See also* Wright & Miller § 2590 ("There are signs, however, that the Second Circuit may be changing its position."); Childress & Davis § 2.28 (noting that "the realistic effect of the Second Circuit approach would appear to be, in practice and even sometimes in language, virtual application of the clearly erroneous rule").[4]

■ It follows that, even if our rule is consistent with a sound reading of *McAllister,* it seems ripe for review. Accordingly, we would, in the appropriate case and after full briefings, welcome the opportunity to have our whole Court reconsider the rule. But this is not such a case. This is so because, on either *de novo* or clear error review, we come to the same conclusion: the defendant was not negligent. In other words, although, despite the open and obvious nature of the risk, the defendants did have a duty of care to Mr. Payne, that duty was adequately discharged. To see why, we need only to review briefly the court's findings of fact.

---

**4.** New York, moreover, refers to the question of the reasonable safety of premises as a question of fact for the jury. *See Michalski,* 225 F.3d at 121; *Grant v. United States,* 271 F.2d 651, 655 (2d Cir.1959); *Trincere v. County of Suffolk,* 90 N.Y.2d 976, 977, 665 N.Y.S.2d

615, 688 N.E.2d 489 (1997). Whether, given this New York view, our rule is consistent with *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), is an interesting question, which we need not consider today.

The district court found pref holes to be necessary to the business of the post office. It determined that Payne and other deliverers were well aware of the danger that such holes pose, and that caution had to be exercised around them. It concluded that the USPS took precautions to protect individuals from the aforementioned hazard by restricting access to the area to postal service employees and drivers, and by requiring that the holes be closed when not in use. Moreover, the court correctly ruled that there was no violation of the USPS safety policy from which negligence could be inferred.[5]

Given these factual conclusions—and especially the district court's additional finding that the pref hole was open (a) because it was in "continuous use" at the time of the accident and (b) because the mail from Payne's truck was about to be dumped— we hold that the defendant was not negligent in its behavior with respect to the pref hole. And this remains so even though we do believe that the USPS did have cause to expect that drivers would be somewhat distracted in the loading dock area.[6]

## C. The District Court's Application of New York Law

■ The appellants' claim that the district court misapplied New York law is also unavailing. Under New York law, landowners have a duty to maintain their properties in a reasonably safe manner. *Basso v. Miller*, 40 N.Y.2d 233, 241, 386 N.Y.S.2d 564, 352 N.E.2d 868 (1976). As we held in *Michalski*, and as all of the Appellate Divisions have recently come to agree, under New York law the open and obvious nature of a dangerous condition— though it may make a warning unnecessary—does not absolve the landowner of its general duty of care. *Michalski*, 225 F.3d at 121; *Cupo v. Karfunkel*, 1 A.D.3d 48, 767 N.Y.S.2d 40, 42–43 (2d Dep't 2003); *Meola v. Metro Demolition Contracting Corp.*, 309 A.D.2d 653, 765 N.Y.S.2d 791, 792 (1st Dep't 2003); *Monge v. Home Depot, Inc.*, 307 A.D.2d 501, 761 N.Y.S.2d 886, 886 (3d Dep't 2003); *Pelow v. Tri-Main Dev.*, 303 A.D.2d 940, 757 N.Y.S.2d 653, 655 (4th Dep't 2003). After reviewing *Michalski*, the district court concluded that the USPS had adequately discharged this duty. Thus, Judge Arcara clearly considered not only whether the danger was open and obvious, but also whether the defendant exercised appropriate care under the circumstances. As a result, the fact that the court, early in its opinion and in passing, erroneously said that there is no duty under New York law to protect against open and obvious dangers is of no

5. The safety policy in question instructs employees to "[c]lose dump holes when you are not using them." Plaintiffs also put into evidence safety memos which note that "[a]ll covers should be closed when not in use," and that it is expected that "dump hole covers will be closed *every time* workers are away from their work area and/or are finished dumping." The district court concluded that there was no breach of USPS policy, because the pref hole was in use at the time of the accident.

The appellants also seem to allege a violation of an OSHA regulation, 29 C.F.R. § 1910.22(c), which provides that "[c]overs and/or guardrails shall be provided to protect personnel from the hazards of open pits, tanks, vats, ditches, etc." There were, of course, covers on the holes, so on a literal reading of what this statute requires, there was no violation. In addition, the district court found that the covers were not only *available* but were being *used* appropriately.

6. Since, on *de novo* review, we reach the same conclusion as the district court, it follows *a fortiori* that, were we to apply the rule of our sister circuits, we would not deem the district court's findings on the question of the existence of negligence to be clearly erroneous.

moment, for it is clear that it later applied the correct, *Michalski*, standard. Moreover, it is also of no significance since we, on *de novo* review and applying *Michalski*, reach the same conclusion.

## III. CONCLUSION

We have considered all of the appellants' claims and find them meritless. Under the *de novo* standard of review which, according to the law of our Circuit, we must apply, we find that the appellee was not negligent. The judgment of the district court is, therefore, AFFIRMED.